# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Philips North America LLC,<br><br>   *Plaintiff*,<br><br> v.<br><br>Garmin International, Inc.<br>and Garmin Ltd.,<br><br>   *Defendants*. | Case No. 2:19-cv-06301-AB-KS<br><br>[PROPOSED]<br>**PROTECTIVE ORDER** |

**Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and based on the parties' Joint Stipulation For Entry Of Protective Order And Electronic Discovery Order ("Stipulation") filed on June 4, 2020, the terms of the protective orders to which the parties have agreed are adopted as set forth in below in the Protective Order and in the concurrently filed Order on Electronic Discovery. The terms of the Protective Order, which are set forth below, have been modified by the Court's amendment of paragraphs 2, 6, 8, 9, and 12.D.iii of the Stipulation.**

## AGREED TERMS OF THE PROTECTIVE ORDER AS ADOPTED AND MODIFIED BY THE COURT[1]

### PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. This Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. This Stipulated Protective Order does not entitle the parties to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

### GOOD CAUSE STATEMENT

This action is likely to involve trade secrets, and other valuable research, development, commercial, financial, technical and/or proprietary information for which

---

[1] The Court's additions to the agreed terms of the Protective Order are generally indicated in bold typeface, and the Court's deletions are indicated by lines through the text being deleted.

special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), proprietary software source code, and confidential and trade secret technological information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. Information shall not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

Further to the foregoing, it is hereby ORDERED as follows:

1. Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained.

2. Any information **that is produced or generated in disclosures or responses to discovery in this matter and** ~~submitted, in discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to lawful discovery request, or a court order, which is~~ asserted by a party to contain or constitute confidential business information shall be so designated by such party in writing, or orally at a deposition, conference or hearing. Documents shall be clearly and prominently marked on their face with the legend: "CONFIDENTIAL" or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.  No party shall redact confidential information in a document; rather, the disclosing party should simply label the document as Confidential, and if it becomes relevant, will inform the receiving party subsequently of any particular portion of the document deemed confidential.

3. In the absence of written permission from the disclosing party or an order by the Court, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this action, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts that are the subject of this action); (iv) the Court and its staff.

4. Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(iii) unless he or she shall have first read this order and shall have signed the undertaking at Attachment A.  However, Attorneys who have filed an appearance in this matter need not

sign the undertaking at Attachment A, but shall nevertheless be subject to, and bound by, the provisions of this Protective Order.

5. If the Court orders, or the disclosing party agrees, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Court finds that the information is not confidential business information as defined in paragraph 1 hereof.

6. Any confidential business information submitted to the Court in connection with a motion or other proceeding shall be submitted **to the Court with an application to file under seal in accordance with this Court's Local Rule 79-5.1 and with competent evidence of "good cause" or "compelling reasons" for a Court order allowing such papers to be filed under seal pursuant to Federal Rule of Civil Procedure Rule 5.2(d).** ~~under seal pursuant to the Local Rules.~~

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Court rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8. If a party who receives materials or information that has been designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall **initiate the dispute resolution process under Local Rule 37.1,** *et seq.* **and comply with the Court's pre-motion discovery procedures.  The party designating the material or information as confidential shall bear the burdens and the expenses of seeking protection of its confidential material in court.** ~~notify the disclosing party in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If the receiving party and the~~

~~disclosing party are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, the party challenging the confidentiality designation may file a motion with the Court seeking to remove the confidentiality designation. If such motion is granted, the non-movant shall compensate the movant for the reasonable expenses and fees associated with the motion. In the event of a mixed result, the Court may fairly apportion fees and expenses.~~ The Court may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

9. No less than 10 days (or any other period of time designated by the Court) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the opposing party. If the opposing party objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall **initiate the dispute resolution process under Local Rule 37.1, *et seq.*, and the parties shall comply with the Court's pre-motion discovery procedures.** ~~notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure. If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the opposing party may file a motion with the Court seeking to block the proposed expert's access to the confidential information.~~ During the **dispute resolution process and the** pendency of ~~the~~ **any related** motion, the expert shall not have access to the disputed information. **The party designating the material or information as confidential shall bear the burdens and the expenses of seeking protection of its confidential material in court.** ~~If the non-movant prevails on the motion, the moving party shall pay to the non-movant all reasonable fees and expenses associated with opposing the motion. In the event of a mixed result, the Court may fairly apportion fees and expenses.~~

10. If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the party that designated the information as confidential, and make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

11. If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this case, such a nonparty shall be considered a "party" as that term is used in the context of this order. Each nonparty party shall be provided a copy of this order by the party seeking information from said party.

12. A party may designate documents, information, or things that constitute or contain non-public Source Code of that part (or of any non-party whose documents or information a party is permitted to produce) as "CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION."

    A.    "Source Code" shall mean source code, object code (i.e., computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator), microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), as well as any and all programmer notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

    B.    Materials designated as CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION shall only be reviewable by SOURCE CODE QUALIFIED PERSONS and shall not be disclosed to anyone except SOURCE CODE QUALIFIED PERSONS. SOURCE CODE QUALIFIED PERSONS include the following: (1) outside litigation counsel who

have signed the Agreement to Be Bound by the Protective Order, and staff assisting such counsel who are necessarily incident to the litigation; (2) personnel at document duplication, coding, imaging or scanning service establishments retained by, but not regularly employed by, outside litigation counsel as necessarily incident to the litigation; (3) personnel at interpretation/translation service establishments retained by, but not regularly employed by, outside litigation counsel as necessarily incident to the litigation, including without limitation oral interpreters and document translators; (4) the Court and Court staff; (5) court reporters, stenographers, and videographers transcribing or recording testimony at depositions, hearings or trial in this litigation, who have signed an acknowledgment to be bound by the Protective Order; and (6) qualified experts (whether testifying experts or non-testifying consultants). Nothing in this paragraph shall prevent a party from disclosing its own Source Code to that party's own employees or qualified experts. Materials designated as CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION shall not be disclosed to In-House Counsel of a receiving party or to any other employee of a receiving party.

C.   Qualified experts may review CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION only after the receiving party complies with the provisions of paragraph 9 of this Protective Order, and such experts have signed the undertaking at Attachment A.

D.   Source Code shall be provided with the following additional protections:

(i)   Nothing in this Protective Order shall obligate the parties to produce any Source Code, nor act as an admission that any particular Source Code is discoverable.

(ii)   Access to Source Code will be given only to SOURCE CODE QUALIFIED PERSONS and, at depositions, hearings and trial, to

witnesses who would otherwise be permitted to see such Source Code including the producing party's employees and experts.

(iii) Access to Source Code shall be provided on no more than two "stand-alone" computer(s) (i.e., the computer(s) may not be linked to any network, including a local area network ("LAN"), an intranet, or the Internet, and may not be connected to any printer or storage device other than the internal hard disk drive of the computer). The stand-alone computer(s) shall be kept in a secure location at the offices of the producing party's outside litigation counsel, or at such other location as the producing party and receiving party mutually agree. If the producing party objects to a particular location for the review of source code, the producing party and receiving party agree to meet and confer in good faith regarding such objection and**, in conformity with Local Rule 37.1, *et seq*. and the Court's pre-motion discovery procedures,** present the dispute to the Court if they are not able to reach agreement. The stand-alone secure computer(s) may be password protected and shall have the Source Code stored on a hard drive contained inside the computer(s). The producing party shall produce Source Code in computer searchable format on the stand-alone computer(s). The stand-alone computer(s) shall, at the receiving party's request, include reasonable analysis tools and translation software appropriate for the type of Source Code and language of any comments. The receiving party shall be responsible for providing the tools, licenses to the tools and/or software that it wishes to use to the producing party so that the producing party may install such tools and software on the stand-alone computer. To the extent that such tools or software record local working files or other records reflecting the work performed by the receiving party, such files and records shall not be reviewed, altered, or deleted by the producing party. If the producing party objects to particular

software tools or software proposed by the receiving party, the producing party and receiving party agree to meet and confer regarding such objection and to present the dispute to the Court if they are not able to reach agreement.

(iv)     The receiving party shall provide at least two (2) business days' notice to access the source code and shall only have access to the stand-alone secure computer(s) during business hours, which for purposes of this paragraph shall be 9:00 a.m. through 6:00 p.m. local time at the reviewing location. The parties are to cooperate in good faith such that maintaining the Source Code at the offices of the producing party's outside litigation counsel shall not unreasonably hinder the receiving party's ability to efficiently conduct the prosecution or defense in this action. It is expected that access to the Source Code shall be provided at the site of any deposition, hearing or trial. Proper identification of all SOURCE CODE QUALIFIED PERSONS shall be provided prior to any access to the stand- alone secure computer.

(v)     All SOURCE CODE QUALIFIED PERSONS who will review Source Code on behalf of a receiving party shall be identified in writing to the producing party at least two (2) business days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any disclosure required under paragraphs 9 of this Protective Order. The producing party shall provide these individuals with information explaining how to start, log on to, and operate the stand-alone computer in order to access the produced Source Code on the stand-alone secure computer(s). For subsequent reviews by SOURCE CODE QUALIFIED PERSONS, the receiving party shall give at least one business day (and at least 24 hours') notice to the producing party of such review. To the extent that the receiving party wishes to

continue a source code review from one day to the next, the receiving party shall notify the producing party by 5:00 p.m. local time on the day of the source code review.

(vi) No person other than the producing party may alter, dismantle, disassemble or modify the stand-alone computer(s) in any way, or attempt to circumvent any security feature of the computer(s).

(vii) No copies shall be made of Source Code, whether physical, electronic, or otherwise, other than volatile copies necessarily made in the normal course of accessing the Source Code on the stand-alone computer(s), except for:

(1) print outs of reasonable portions of the Source Code in accordance with the provisions of this Protective Order; (2) notes and other analysis made of the Source Code; and (3) such other uses to which the parties may agree or that the Court or the Court may order. The receiving party shall not use any outside electronic device to copy, record, photograph, or otherwise reproduce Source Code. "Reasonable portions of the Source Code" shall be limited to the portions that are necessary for a qualified expert to discuss when explaining his or her opinions regarding a relevant feature of an accused or alleged domestic industry product in this action, and are subject to the presumptive limits in section (ix) below. Pages shall not be printed for the purpose of reviewing code in the first instance, as code review is to take place on the stand-alone computer(s). The producing party shall not unreasonably withhold approval and the parties shall meet and confer in good faith to resolve any disputes. The receiving party may take notes on a non- networked laptop, provided such device does not have a camera and does not have any network connectivity in the source code review room. The receiving party may not copy Source Code itself into the notes, but may take note of directories and filenames.

The receiving party may not take such notes on the stand-alone computer(s) containing the Source Code, but rather only on paper or on the separate non-networked laptop. No networked devices or recordable media or recordable devices, including without limitation computers, tablets, smartphones, cellular telephones, peripheral equipment, cameras, sound recorders, CDs, DVDs, or drives of any kind, shall be permitted into the source code review room with the stand-alone computer(s). Any notes taken regarding Source Code, whether on paper or electronically, shall be treated as CONFIDENTIAL SOURCE CODE– ATTORNEYS' EYES ONLY INFORMATION under this Protective Order. The producing party may exercise personal supervision from outside the review room over the receiving party when the receiving party is in the Source Code review room.  Such supervision, however, shall not entail review of any work product generated by the receiving party, e.g., monitoring the screen of the stand-alone computer, monitoring any surface reflecting any notes or work product of the receiving party, or monitoring the key strokes of the receiving party. There will be no video supervision by any producing party.

(viii) Nothing may be removed from the stand-alone computer, either by the receiving party or at the request of the receiving party, except for (1) print outs of reasonable portions of the Source Code in accordance with the provisions of this Protective Order; and (2) such other uses to which the parties may agree or that the Court or the Court may order.

(ix) At the request of the receiving party, the producing party shall within three (3) business days provide one (1) hard copy print out of the specific lines, pages, or files of the Source Code that the receiving party believes in good faith are necessary for its qualified expert to discuss when explaining his or her opinions

regarding a relevant feature of an accused or alleged domestic industry product. If the producing party objects in any manner to the production of the requested source code (e.g., the request is too voluminous), it shall state its objection within the allotted two (2) business days pursuant to this paragraph. Any printed portion that consists of more than twenty-five (25) pages of a continuous block of Source Code shall be presumed to be excessive. Without permission by the producing party or leave from the Court, the receiving party may request printed copies of no more than five hundred (500) pages of total Source Code from each producing party. In the event of a dispute, the parties will meet and confer within five (5) business days of the objection being raised, and if they cannot resolve it the parties will raise it with the Court.

(x)  Hard copy print outs of Source Code shall be provided on Bates numbered and watermarked or colored paper clearly labeled CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION on each page and shall be maintained by the receiving party's outside litigation counsel or SOURCE CODE QUALIFIED PERSONS in a secured locked area. The receiving party may also temporarily keep the print outs at: (1) the Courthouse for any proceedings(s) relating to the Source Code, for the dates associated with the proceeding(s); (2) the sites where any deposition(s) relating to the Source Code are taken, for the dates associated with the deposition(s); and (3) any intermediate location reasonably necessary to transport the print outs (e.g., a hotel prior to a hearing or deposition). For avoidance of doubt, an access-restricted location within the facilities of outside litigation counsel or a qualified expert, such as a conference room within an access

restricted office or a locked drawer or cabinet, shall constitute a secured locked area. The receiving party shall exercise due care in maintaining the security of the print outs at these temporary locations. No further hard copies of such Source Code shall be made and the Source Code shall not be transferred into any electronic format or onto any electronic media except that:

      1. The receiving party is permitted to make up to three (3) additional hard copies for use at a deposition. One hard copy of the source code may be marked as an exhibit for the deposition, and then maintained by counsel for the party presenting the exhibit during the deposition in a secured locked area. All other copies shall be destroyed immediately after the deposition is concluded.

      2. The receiving party is permitted to make up to five (5) additional hard copies for the Court in connection with a Court filing, hearing, or trial, and of only the specific pages directly relevant to and necessary for deciding the issue for which the portions of the Source Code are being filed or offered. To the extent portions of Source Code are quoted in a Court filing, either (1) the entire document will be stamped and treated as CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION; or (2) those pages containing quoted Source Code will be separately stamped and treated as CONFIDENTIAL SOURCE CODE– ATTORNEYS' EYES ONLY INFORMATION.

      3. Electronic copies of Source Code may be made to be included in documents which, pursuant to the Court's rules, procedures and order(s), may be filed or served electronically. Only the necessary amount of electronic copies to effectuate such filing or service may be stored on any receiving party server, hard drive, thumb drive, or other electronic storage device at any given time. After any such electronic filing or service,

the receiving party may maintain reasonable copies of such filings, but shall delete all other electronic copies of Source Code from all receiving party electronic storage devices.

4.      The receiving party is permitted to possess up to three (3) additional hard copies of the print-outs of Source Code provided by the producing party in order to provide them to qualified experts, who may use such hard copies solely in connection with their preparation of opinions regarding the accused or alleged domestic industry products. All such copies shall be destroyed within five (5) days after the entry of an order terminating this action.  The receiving party shall keep and maintain a log of all custodians for all of the hard copies as well as the destruction of all such hard copies.

5. The producing party shall, on request, make a searchable electronic copy of the Source Code available on a stand-alone computer during depositions of witnesses who would otherwise be permitted access to such Source Code. The receiving party shall make such request at the time of the notice for deposition.

(xi)    Nothing in this Protective Order shall be construed to limit how a producing party may maintain material designated as CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION.

(xii)   Outside litigation counsel for the receiving party with custody of CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION shall maintain a source code log containing the following information: (1) the identity of each person granted access to the CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION; and (2) the first date on which such access was granted. Outside litigation counsel for the receiving party will produce, upon

request, each such source code log to the producing party within twenty (20) days of entry of an order terminating this action.

(xiii) In addition to the procedures detailed in this Paragraph, access to the Source Code may be provided through a "remote-access" computer that provides remote access to the "stand-alone" computer(s). The producing party shall provide one remote-access computer to the receiving party. The remote-access computer may be password protected and shall be used by the receiving party for no purpose other than performing the review of Source Code. The receiving party shall not attempt to disable, defeat, or sidestep any security measures on the remote-access computer or the stand-alone computer. Nor shall the receiving party transfer any data from the stand-alone computer or otherwise access the stand-alone computer through means other than those provided by the supplying party on the remote-access computer. The remote-access computer shall be accessed only in a location where it cannot be viewed by any person who is not a SOURCE CODE QUALIFIED PERSON. The remote-access computer shall not be used to create screenshots of the source code, to print any files directly (as opposed to the printing procedure in Paragraph 12(D)(ix), which remains available to the receiving party), to download any files from the stand-alone computer, or to take notes (notes are permitted to be taken on a separate non-networked computer pursuant to Paragraph 12(D)(vii)). Additionally, the receiving party is not permitted to take photographs or video of, or to otherwise record, the information on the screen of the remote- access computer. Whenever a review is to occur, the producing party must be notified, and the receiving party must provide video access (*i.e.* via FaceTime, WebEx, Zoom, etc.) to be able to exercise personal supervision of the receiving party. The video access shall be akin to monitoring a review of a stand-alone computer through a window to a

conference room. Such video access, however, shall not entail review of any work product generated by the receiving party, e.g., monitoring the screen of the remote-access computer, monitoring any surface reflecting any notes or work product of the receiving party, or monitoring the key strokes of the receiving party.  During any remote access session as described above, the supplying party may also make an automated recording of the receiving party's code review activity (i.e., a screen recording or automated list of the actions taken by the reviewer on the "stand-alone" computer) by using a recording feature on the stand-alone computer. However, the producing party shall not review any such automated recording of the code review activity unless a dispute arises about whether the receiving party has complied with the remote-access review protocol described above, in which case the producing party may review the recording solely to determine whether the protocol has been violated.

13. The following sets out terms for access by Designated In-House Counsel.

(a) The term "Designated In-House Counsel" means an in-house attorney who has met the conditions specified in this Protective Order for access to certain information designated under this Protective Order.  Plaintiff may designate no more than three (3) in-house counsel in total under this paragraph. Defendants collectively may designate no more than three (3) in-house counsel in total under this paragraph.

(b) Each person designated as a Designated In-House Counsel must read the Protective Order including all Addenda thereto, and must agree, by letter filed with the Court: (i) to be bound by the terms thereof; (ii) not to reveal information designated under the Protective Order to anyone other than another person properly designated under the Protective Order; (iii) to utilize such information solely for purposes of this litigation; and (iv) to be bound to the acknowledgement at Attachment A of this Protective Order, which signed acknowledgement shall be filed with the letter.

(c) In addition, each Designated In-House Counsel of Plaintiff who desires access to material designated by Defendants must also agree, by their letter filed with this Court: (v) to be bound by the Prosecution Bar in paragraph 14 below.

(d) An in-house counsel who has been designated as a Designated In-House Counsel, and whose letter of agreement has been filed in accordance with section (b) above, may thereafter have access to materials designated under this Protective Order except that no Designated In-House Counsel shall have access to any materials designated "CONFIDENTIAL SOURCE CODE–ATTORNEYS' EYES ONLY INFORMATION" or otherwise designated as containing Source Code.

(e) Nothing in this paragraph shall be construed to prevent any designating party from agreeing, if it so desires, to share information it has designated under this Protective Order with any other party or person.

14. This sections sets forth the terms governing the patent prosecution bar.

(a) Any Designated In-House Counsel of Plaintiff who personally receives and reviews any material designated under this Protective Order by any of Defendants, and any Designated In-House Counsel of Defendants who personally receives and reviews any material designated under this Protective Order by Plaintiff, shall not participate in the preparation or prosecution of any patent, patent application, reexamination petition, or reissue application, or the drafting or revising of patent claims, directed to wearable monitoring devices, such as activity trackers and fitness trackers, including health and activity monitoring devices, that may be worn on the wrist like a watch or bracelet or attached to clothing, from the time of receipt of such material through and including the first to occur of the following: (i) one (1) year following the expiration of the last patent being asserted in this litigation; (ii) one (1) year following the complete resolution of this litigation through entry of a final non-appealable judgment or order for which appeal has been exhausted; or (iii) one (1) year following the complete settlement of all claims against all the parties in this action.

(b) Nothing in this Prosecution Bar shall prohibit any Designated In-House

Counsel from participating in any post-grant proceedings before the United States Patent and Trademark Office (or any similar agency of a foreign government), including but not limited to *inter partes* review, covered business method review, post-grant review, or *ex parte* reexamination, to the extent that such person's participation does not involve the drafting or amending of patent claims for wearable monitoring devices, such as activity trackers and fitness trackers, including health and activity monitoring devices, that may be worn on the wrist like a watch or bracelet or attached to clothing.

DATED: June 8, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

18
PROTECTIVE ORDER
CASE NO. 2:19-cv-06301-AB-KS

# Attachment A

# NONDISCLOSURE AGREEMENT

I, _____ , do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the present *Philips North America, Inc v. Garmin International, Inc. and Garmin Ltd.* litigation pending in the Central District of California, Case. No. C.A. No. 2:19-cv-06301-AD (Ksx), except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of this proceeding or hearing in this case.  I also affirm that I do not hold any position or official relationship with any of the participants in this case aside from the role I have been engaged to perform in this litigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of Court's protective order, and sanctionable as contempt.

Signed: _____

Printed Name: _____

Dated: _____

Firm or affiliation: _____