LAMKIN IP DEFENSE
RDL@LamkinIPDefense.com
Rachael D. Lamkin (246066)
One Harbor Drive, Suite 304
Sausalito, CA 94965
(916) 747-6091 Telephone

Michelle L. Marriott (*pro hac vice*)
michelle.marriott@eriseip.com
Erise IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211
(913) 777-5600 Telephone
(913) 777-5601 Facsimile

*Attorneys for Defendants Garmin*
*International, Inc. and Garmin Ltd.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC, | Case No. 2:19-cv-06301-AB-KS |
| Plaintiff, | **MEMORANDUM OF POINTS** |
| | **AND AUTHORITIES IN** |
| v. | **SUPPORT OF DEFENDANTS'** |
| | **MOTION TO AMEND** |
| GARMIN INTERNATIONAL, INC. | **PLEADING** |
| AND GARMIN LTD., | |
| | Date:  August 28, 2020 |
| Defendants. | Time:  10:00 A.M. |
| | Courtroom: 7B |
| | Judge:  Hon. André Birotte Jr. |
| | |
| | Date Filed: July 22, 2020 |
| | Trial Date: March 30, 2021 |

Defendants Garmin International, Inc. and Garmin Ltd. (collectively, "Garmin") respectfully seek leave, pursuant to Fed. R. Civ. P. 15(a), Local Rule 15, the Court's Standing Order, and the Court's Order (Dkt. 81), to file the Proposed First Amended Answer, Affirmative Defenses, and Counterclaims attached as **Exhibits A** (Garmin International, Inc.) **and B** (Garmin Ltd.) to bring an affirmative defense and counterclaim for inequitable conduct relating to U.S. Patent No. 9,314,192 against Plaintiff Philips North America LLC ("Philips").

## I.    INTRODUCTION

Garmin seeks to amend its pleadings to assert an affirmative defense and counterclaim of inequitable conduct.  Garmin's inequitable conduct claim relates to one of the patents asserted in this case, U.S. Patent No. 9,314,192 ("the '192 Patent").  The '192 Patent was filed and prosecuted by Philips, and claims priority to a patent application filed by Philips in the European Patent Office (the application referred to herein as the "EP Application").  As detailed in the proposed amended pleading and below, the European Patent Office rejected the EP Application in view of the *Yamamoto* prior art reference.  After receiving the *Yamamoto* rejection, Philips abandoned and withdrew the EP Application entirely.

Despite this rejection and abandonment of the EP Application due to *Yamamoto*, Philips never disclosed *Yamamoto* to the United States Patent and Trademark Office ("USPTO") in connection with the related '192 Patent.  Instead, Philips withheld the *Yamamoto* reference from the USPTO, knowing that it was fatal to the EP Application, while selectively disclosing other prior art references that Philips was able to successfully overcome in prosecution of other related foreign counterparts to the '192 Patent.

Garmin should be granted leave to amend.  Garmin's amended pleading explains in detail the available factual basis for Philips' knowledge of *Yamamoto*, and why Philips' withholding of *Yamamoto* was but-for-material to the patentability

of the '192 Patent claims.  In view of these facts, Philips understood that when *Yamamoto* was disclosed, the patent application was rejected; and when *Yamamoto* was not disclosed, the patent application was granted.  Philips also understood the materiality of *Yamamoto* to the claims of the '192 Patent, as the European Patent Office mapped the claim limitations to *Yamamoto* in its rejection.  These facts – pleaded in detail and with particularity – are more than sufficient to allege inequitable conduct.

Garmin therefore respectfully requests that the Court grant leave to amend its pleading to assert inequitable conduct.  Pursuant to the Court's Standing Order 7(b), Garmin states that the effect of the proposed amendment is to assert a defense and counterclaim for inequitable conduct as to the '192 Patent.  The amendment consists of "Counterclaim 4 and Affirmative Defense" contained on pages 24-34 of Exhibits A and B.

## II.    PROCEDURAL BACKGROUND

Garmin timely sought to amend its pleadings to assert inequitable conduct after discovering the underlying facts when finalizing its invalidity contentions.  The Parties met and conferred regarding Garmin's motion to amend on May 21, 2020 pursuant to L.R. 7-3. During this meet-and-confer, counsel for Philips stated that Philips did not oppose the amendment as untimely but did intend to oppose only on grounds of futility. However, in order to further assess such opposition, counsel for Garmin agreed to provide the amended pleading to counsel for Philips for review. After such review, counsel for Philips confirmed its above-stated position, but did not further explain Philips' position.  *See* Dkt. 78.

The parties submitted a Joint Stipulation seeking to amend the scheduling order to permit Garmin leave to file this motion to amend.  Dkt. 78.  As noted in that Stipulation, "Garmin did not delay in seeking amendment," "Philips did not oppose the amendment as untimely," and "[t]he Parties submit that there is good cause for

1  the requested extension." *Id.*  The parties also agreed to a briefing procedure to
2  accommodate Philips' desired motion practice.  The Court granted the parties'
3  request to amend the scheduling order.  Dkt. 81.

4       Garmin has served written discovery requests on Philips seeking, *inter alia*,
5  documents "relating to the prosecution of the '192 Patent," documents "reflecting
6  the structure, contents, filing hierarchy, and accessibility of information related to"
7  Philips' internal files relating to the EP Application and the '192 Patent, documents
8  relating to "the identity of computers or server architecture utilized by Philips IP&S
9  [Intellectual Property & Standards] in connection with the prosecution of the '192
10 Patent," documents "sufficient to identify all individuals affiliated with Philips IP&S
11 that were involved in any way with the prosecution of the '192 Patent," and
12 documents "relating to Philips IP&S' knowledge that the claims of the European
13 patent application from which the '192 Patent claims priority were found to be not
14 novel in view of" *Yamamoto*.  As of the filing of this motion, Philips has served
15 objections to these requests, but has not yet produced the requested documents. *See*
16 **Exhibit C**.

17 **III.   LEGAL STANDARDS**

18      Under Federal Rule of Civil Procedure 15, titled "Amended and Supplemental
19 Pleadings," courts "should freely give leave [to amend] when justice so requires."
20 FRCP 15(a)(2). "Accordingly, Rule 15's policy of favoring amendments to
21 pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655
22 F.2d 977, 979 (9th Cir. 1981).

23      Leave to amend lies "within the sound discretion of the trial court." *Webb*,
24 655 F.2d at 979.  In exercising its discretion, "a court must be guided by the
25 underlying purpose of Rule 15: to facilitate decision on the merits, rather than on the
26 pleadings or technicalities." *Id.*  "Amendment is to be liberally granted where from
27 the underlying facts or circumstances, the [claimant] may be able to state a claim."
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO AMEND PLEADING

1  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  While a motion

2  for leave to amend may be denied if it is futile, an opposed amendment is "futile

3  only if no set of facts can be proved under the amendment to the pleadings that would

4  constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845

5  F.2d 209, 214 (9th Cir. 1988), overruled on other grounds by *Ashcroft v. Iqbal*, 556

6  U.S. 662 (2009).  As the party opposing amendment, Philips bears the burden of

7  showing futility.  *Leighton*, 833 F.2d at 187.

8  **IV.   ARGUMENT**

9  Garmin's proposed amended pleading sufficiently alleges that individuals

10  employed by Philips knew of the *Yamamoto* reference, knew that *Yamamoto* was

11  material to the patentability of the claims of the '192 Patent, and withheld *Yamamoto*

12  with a specific intent to deceive the USPTO.  Thus, contrary to Philips' suggestion

13  of futility, Garmin's proposed amendment is more than sufficient to state a claim for

14  inequitable conduct.

15  Inequitable conduct is a judicially-created equitable defense to patent

16  infringement.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285

17  (Fed. Cir. 2011) (*en banc*).  When a court determines that inequitable conduct has

18  occurred as to one or more claims of a patent, the entire patent is rendered

19  unenforceable.  *Id.* at 1287.  Inequitable conduct generally requires a showing of (1)

20  specific intent to deceive the Patent Office and (2) "but-for materiality," meaning

21  that the patent would not have issued but for the misrepresentation or omission."  *Id.*;

22  *Glaukos Corp. v. Ivantis, Inc.,* No. CV-18620-JVS-JDEX, 2019 WL 4198641, at *4

23  (C.D. Cal. July 17, 2019) (granting motion to amend to assert inequitable conduct).

24  The standard for pleading inequitable conduct was set forth in *Exergen Corp.*

25  *v. Wal-Mart Stores, Inc*, 575 F.3d 1312, 1327 (Fed. Cir. 2009), which requires that

26  inequitable conduct be pleaded with particularity – i.e., an "identification of the

27  specific who, what, when, where, and how of the material misrepresentation or

28

1  omission committed before the PTO." *Exergen*, 575 F.3d at 1327; *see also Kaneka*
2  *Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2014 WL 12779863, at
3  *2-3 (C.D. Cal. May 30, 2014). The "who" is an inference that specific individual(s)
4  knew of material information and deliberately withheld it with the specific intent to
5  deceive the PTO. *Kaneka*, 2014 WL 12779863, at *3. The "what" and "where" are
6  satisfied when the pleading "identif[ies] which claims, and which limitations in those
7  claims, the withheld references are relevant to." *Id.* (quoting *Exergen,* 575 F.3d at
8  1329). Such allegations help explain both "why" the withheld information is
9  material and "how" an examiner would have used this information in assessing the
10 patentability of the claims. *Exergen,* 575 F.3d at 1328–30. "[K]nowledge" and
11 "intent" may be "averred generally," but the pleading must "include sufficient
12 allegations of underlying facts from which a court may reasonably infer[1] that a
13 specific individual (1) knew of the withheld material information or of the falsity of
14 the material misrepresentation, and (2) withheld or misrepresented this information
15 with a specific intent to deceive the PTO." *Id.* at 1328-29; *see also Kaneka,* 2014
16 WL 12779863, at *3.

17       At over ten pages, Garmin's Amended Counterclaim sets forth the who, what,
18 when, where, why, and how of Philips' inequitable conduct in connection with the
19 '192 Patent. As detailed in the pleading, the '192 Patent claims priority to the earlier-
20 filed EP Application filed in the European Patent Office. The European Patent
21 Office rejected the EP Application in view of the *Yamamoto* reference, detailing how
22 the teachings of *Yamamoto* invalidated the claim limitations. As a result, Philips
23 withdrew the EP Application entirely. Yet despite its knowledge of *Yamamoto* and
24 its teachings, the European Patent Office's rejection of the EP Application, and

25
26 [1] A "reasonable inference" is one that "is plausible and that flows logically from the
27 facts alleged." *Exergen*, 575 F.3d at 1329 n.5.
28

Philips' withdrawal of the parent application in view of *Yamamoto*, Philips withheld *Yamamoto* from the USPTO during prosecution of the '192 Patent while disclosing other prior art that was not fatal to the claims of the EP Application and other foreign counterparts.

In short, the amended pleading factually alleges that Philips knew of *Yamamoto*, knew that *Yamamoto* was material to the patentability of the '192 Patent because it had been used by the European Patent Office to reject similar claims to the '192 Patent,[2] and selectively withheld *Yamamoto* from the USPTO in order to avoid a similar rejection of the '192 Patent.  The amended counterclaim summarizes these allegations as follows:

    a. **Who:** Philips IP&S employees responsible for prosecution of the '192 Patent, including but not limited to Yan Glickberg, Kathleen Asher, Patricia Heim, Edward Goodman, and Jeanne Rusciano.

    b. **What:** withheld the Yamamoto reference—which was fatal to the EP Application—during the prosecution of the US Application that led to the '192 Patent, while simultaneously disclosing art from other foreign prosecution that had not been fatal to those applications.

    c. **When:** from June 21, 2007 to December 17, 2015.

    d. **Where:** before the USPTO and in Philips IP&S offices containing the persons named in ¶ 56(a), supra.

    e. **How:** by violating their duty of candor the USPTO.

---

[2] The amended pleading contains a chart showing how claim 1 of the '192 Patent is taught by the specific teachings of *Yamamoto* identified by the European Patent Office.

All together, these allegations explain *why* the withheld reference is material and *how* an examiner would have used this information in assessing the patentability of claim 1 of the '192 Patent—that the "USPTO would not have allowed the claims of the '192 Patent had it been aware of the Yamamoto reference" – allegations from which the Court may reasonably infer that Philips IP&S knew of *Yamamoto* and withheld it with a specific intent to deceive the USPTO. *See* Exhibits A, B.

## V.    CONCLUSION

Garmin's proposed amended pleading alleges inequitable conduct with particularity. Accordingly, pursuant to Federal Rule of Civil Procedure 15, Garmin respectfully requests that the Court grant Garmin's Motion to Amend.


DATED: July 22, 2020

                              LAMKIN IP DEFENSE
                              ERISE IP, P.A.


                      By:  */s/ Michelle L. Marriott*

                      *Counsel for Defendants Garmin International, Inc. and Garmin Ltd.*