JEAN-PAUL CIARDULLO, CA Bar No. 284170
jciardullo@foley.com
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

ELEY O. THOMPSON (*pro hac vice*)
ethompson@foley.com
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312-832-4359
Facsimile: 312-83204700

RUBEN J. RODRIGUES (*pro hac vice*)
rrodrigues@foley.com
LUCAS I. SILVA (*pro hac vice*)
lsilva@foley.com
JOHN W. CUSTER (*pro hac vice*)
jcuster@foley.com
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: (617) 342-4000
Facsimile: (617) 342-4001

*Attorneys for Plaintiff*
*Philips North America LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

Philips North America LLC,

*Plaintiff*,

*vs*.

Garmin International, Inc. and Garmin Ltd.,

*Defendants*.

Case No. 2:19-cv-06301-AB-KS

**PHILIPS NORTH AMERICA LLC's OPPOSITION TO DEFENDANTS' MOTION TO AMEND; MOTION TO DISMISS IN THE ALTERNATIVE**

Date: August 28, 2020
Time: 10:00 A.M.
Courtroom: 7B

Hon. André Birotte Jr.

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. APPLICABLE LAW .......... 2

A. Futility Of Amendment .......... 2

B. The Strict Inequitable Conduct Standard Under *Therasense* .......... 2

C. The Inequitable Conduct Pleading Standard Under *Exergen* .......... 3

III. THERE IS NO PLAUSIBLE PLEADING UNDER *EXERGEN* THAT THE ATTORNEYS PROSECUTING THE '192 PATENT WERE AWARE OF YAMAMOTO, MUCH LESS THAT THEY BELIEVED IT WAS MATERIAL AND WITHHELD IT .......... 4

A. Garmin's Proposed Pleading Is Speculation Improperly Couched As Fact .......... 4

B. The Relevant US Attorneys Were Not Involved In The EU Prosecution .......... 6

C. A Simple Timeline Shows The Disconnect Between Events In The EU And The US .......... 8

D. The Citation Of The Japanese Reference Does Not Plausibly Suggest Knowledge Of Yamamoto .......... 10

IV. THE LAW COMPELS DENIAL OF GARMIN'S MOTION AS FUTILE .......... 11

A. *Exergen* And Its Progeny Are Directly On Point .......... 11

B. The ITC Recently Granted Philips's Request To Strike An Even More Elaborate Pleading .......... 13

C. The Court Should Not Indulge Garmin's Tactical Maneuvering To Create A Wasteful Sideshow .......... 14

V. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE PLEADINGS FOR FAILURE TO STATE A CLAIM .......... 15

VI. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000) .... 6

*BlackBerry Ltd. v. Typo Prods LLC*, 14-cv-00023-WHO (N.D. Cal. May 8, 2014) .... 12

*Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418 (Alito, J.) .... 12

*Certain Wearable Monitoring Devices, Systems, and Components Thereof*, ITC Investigation No. 337-TA-1190 .... 13

*Davis v. Lost Int'l LLC*, No. CV 12-8002 GAF, 2013 U.S. Dist. LEXIS 199179 (C.D. Cal. Apr. 8, 2013) .... 7

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) .... 2, 3, 4, 11, 12

*Foman v. Davis*, 371 U.S. 178 (1962) .... 2

*Idearc Media, LLC v. Palmisano & Assocs., P.C.*, No. CV 09-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 52052 (D. Ariz. Apr. 12, 2012) .... 14

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988) .... 2

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .... 6

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) .... 2, 3

*Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883 (GEB), 2010 WL 3908036 (D. N.J. Jan. 4, 2016) .... 12

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................3, 12, 13, 15

Fed. R. Civ. P. 12(b)(6)..................................................................................2, 6, 14, 15

Fed. R. Civ. P. 15 ..........................................................................................3, 14, 15

# I. INTRODUCTION

Plaintiff Philips North America, LLC ("Philips") hereby respectfully opposes Defendants Garmin International, Inc.'s and Garmin Ltd.'s (collectively "Garmin") Motion to Amend their Counterclaims to add allegations of inequitable conduct with respect to U.S. Patent No. 9,314,192 ("'192 Patent") on the grounds that such amendment would be futile, and that Garmin is improperly seeking to derail and multiply these proceedings. Significantly, although not acknowledged by Garmin, the International Trade Commission just recently granted Philips's Motion to Strike very similar inequitable conduct allegations in a co-pending proceeding between the parties. (*See* Ruling at **Exhibit 1** to the accompanying Declaration of Jean-Paul Ciardullo.)

Garmin's proposed counterclaim rests on the premise that the Philips attorneys prosecuting the '192 Patent application in the US were aware of purportedly material prior art – the Yamamoto reference – that had been cited in a European patent application claiming similar priority. However, as is apparent on the face of the US and EU application file histories that Garmin's pleadings rely upon, none of the same attorneys handing the US case were ever involved in the EU case, and indeed they are from different continents. The only linkage Garmin draws between the separate US and EU patent prosecutors is the fact that they all work for Philips, and they use the same automated docket numbering format (even though the record establishes that there were separate file names and separate files in the US and EU). As is proved up by the proposed pleadings themselves, the Philips Intellectual Property & Standards (IP&S) group has hundreds of professionals working in dozens of offices prosecuting more than a thousand patent applications per year, such that imputing specific knowledge across the organization is not plausible on its face. Furthermore, the Yamamoto reference was cited in the EU a full *six years after* the '192 Patent application had already been filed and was nearing the end of prosecution.

The law is clear that "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to

support an allegation of inequitable conduct." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009). Here, Garmin cannot even plausibly allege that the US attorneys in question knew of the Yamamoto reference, much less believed it was material and deliberately withheld it with intent to deceive. If Garmin wishes to try to argue that the '192 Patent is invalid in view of Yamamoto, it can attempt to do so without invoking a trumped-up claim of inequitable conduct, which is a cause of action the Federal Circuit has aptly called the "plague" of the patent system.

In the alternative, should the Court not preclude amendment, Philips simultaneously requests that any amended pleading be dismissed under Fed. R. Civ. P. 12(b)(6).

## II. <u>APPLICABLE LAW</u>

### A. <u>Futility Of Amendment</u>

Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires," at least "in the absence of…undue delay, bad faith[,] dilatory motive on the part of the movant, …undue prejudice to the opposing party…, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

### B. <u>The Strict Inequitable Conduct Standard Under *Therasense*</u>

In the landmark case *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1290 (Fed. Cir. 2011), the Federal Circuit held that in order to prove inequitable conduct "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." The *Therasense* court explained its rationale as follows:

> …the remedy for inequitable conduct is the 'atomic bomb' of patent law. … 'The habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable

> lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps.' [] Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system. Because allegations of inequitable conduct are routinely brought on 'the slenderest grounds,' [] patent prosecutors constantly confront the specter of inequitable conduct charges. …While honesty at the PTO is essential, low standards for intent and materiality have inadvertently led to many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality. This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.

*Therasense*, 649 F.3d 1288-90 (citations omitted).

Notably, the *Therasense* court also observed (*id*., at 1302) that "to the extent there are concerns with litigation abuses surrounding the improper use of this otherwise important doctrine, there are vehicles available to the district court to address those concerns [including] [c]areful application of the pleading requirements set forth in *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312 (Fed. Cir. 2009),"

### C. The Inequitable Conduct Pleading Standard Under *Exergen*

The Federal Circuit in *Exergen* set forth the pleading standard under Fed. R. Civ. P. 9(b) for claims of inequitable conduct:

> In sum, to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient

> allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen,* 575 F.3d at 1328-29.

## III. <u>THERE IS NO PLAUSIBLE PLEADING UNDER *EXERGEN* THAT THE ATTORNEYS PROSECUTING THE '192 PATENT WERE AWARE OF YAMAMOTO, MUCH LESS THAT THEY BELIEVED IT WAS MATERIAL AND WITHHELD IT</u>

### A. <u>Garmin's Proposed Pleading Is Speculation Improperly Couched As Fact</u>

Garmin's proposed counterclaim is wordy, but ultimately says very little. The relevant bases of Garmin's allegations are boiled down in Paragraphs 123-126 of the proposed counterclaim:

> 123. The Philips IP&S team prosecuting the U.S. Application knew of the Yamamoto reference, and knew that it was material to the patentability of the U.S. Application.
>
> 124. The Philips IP&S team operates in a coordinated fashion across its offices throughout the world. Philips IP&S prosecuted the EP Application, and thus was aware of Yamamoto, was aware of the EPO's rejection of the EP Application based on Yamamoto, and made the decision to withdraw the EP Application in view of the Yamamoto rejection.
>
> 125. Philips IP&S assigned the same internal docketing number to the EP Application and the US Application, such that the Yamamoto reference cited in (and used to reject the claims in) the prosecution of the EP Application was linked to the US Application. Philips IP&S

further claimed priority to the EP Application in connection with the US Application.

126. And, importantly, in response to the USPTO's statement that an additional search was required, Philips IP&S selectively disclosed other references that were cited against foreign counterparts (such as the prior art cited against the Japanese Application) but withheld the Yamamoto reference that resulted in the rejection and withdrawal of the EP Application.

As an initial and dispositive matter, Garmin improperly assumes that knowledge of patent prosecution should be imputed across the entire Philips Intellectual Property & Standards (IP&S) organization, alleging that "Philips IP&S…was aware of Yamamoto" and "Philips IP&S…withheld," etc. While Philips could say a lot about the actual functioning and operation of IP&S, Philips need not introduce anything outside of the proposed pleadings to show that Garmin's assumptions are unwarranted.

As set forth in Paragraph 80 of the proposed counterclaim, Philips IP&S is composed of "over 300 intellectual property experts in 18 offices in 11 different countries." According to the Philips IP&S "About" webpage (https://www.ip.philips.com/about) that was incorporated into the draft counterclaim at Paragraph 79, "Royal Philips' total IP portfolio currently consists of 64,500 patent rights, 39,000 trademarks, 88,500 design rights and 3,200 domain names. Philips filed 1,015 new patents in 2019, with a strong focus on the growth areas in Healthtech services and solutions."

Thus, as borne out by the pleadings of the proposed counterclaim itself, Philips IP&S is a large multi-national organization with hundreds of professionals in dozens of offices around the world that files upwards of a thousand patent applications a year. As a starting point, then, it already strains plausibility to assume that a given attorney working on a patent application in one office would have perfect knowledge of the work of an attorney in a different office.

Garmin tries to tie the work of the Philips IP&S offices together by pointing to the

fact that similar internal tracking numbers are used for foreign counterpart applications. However, this unsurprising and unremarkable fact can hardly support specific plausible facts that US patent prosecution attorneys working on dozens or hundreds of patent applications per year track every detail of the dozens or hundreds of other patent applications that their foreign counterparts are working on across the ocean.

Ultimately, Garmin's arguments hinge on two purely speculative conclusions: (1) that the attorneys prosecuting the '192 Patent knew of the Yamamoto reference, and (2) that they believed it was material and deliberately withheld it. Although Garmin carefully avoids using the phrase "upon information and belief" in its proposed pleadings, Garmin in actuality has no factual basis to support the speculative conclusions that it wants the Court to entertain. *See, e.g., In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839 (N.D. Cal. 2000) ("it is irrelevant whether a plaintiff uses the phrase 'information and belief' when alleging false representations because allegations of misrepresentations not made on personal knowledge are presumed to be made on information and belief.").

### B. <u>The Relevant US Attorneys Were Not Involved In The EU Prosecution</u>

Although Garmin's proposed pleading identifies five US patent prosecutors – Yan Glickber, Kathleen Asher, Patricia Heim, Edward Goodman, and Jeanne Rusciano – as the relevant attorneys involved in prosecuting the '192 Patent application, Garmin nowhere alleges that these attorneys had any involvement in prosecuting the European Application in which the Yamamoto reference was cited. That is because they were not involved, as is apparent from the face of the public records of the prosecution of the patent applications.

Although Garmin did not include copies of the file histories for the EU and US applications for the Court's review in either its proposed counterclaim or its present motion, Philips has included them here as **Exhibits 2 and 3**, respectively, to the Ciardullo Declaration. The Court may properly consider them because they are incorporated by reference in the proposed counterclaim and are necessary for assessing the sufficiency of the proposed pleading. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately

omitting…documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."); *Davis v. Lost Int'l LLC*, No. CV 12-8002 GAF (MANx), 2013 U.S. Dist. LEXIS 199179, at *8 (C.D. Cal. Apr. 8, 2013) (court may take judicial notice of patent file history even if it were not relied on in complaint).

As a threshold matter, it is notable that correspondence in the EU and US prosecution went to two different addresses, with EU office actions being delivered to Philips IP&S in The Netherlands, and the US office actions going to Philips IP&S in the US. (*See* file histories, generally.)

From 2005 to December of 2010, several different European attorneys were involved in the prosecution of the European Application. Daniel Damen was listed on the face of the International application published Jun 21, 2007.[1] The Request for Entry into the European Phase on May 13, 2008 listed Marcus Schouten as a representative and A. Groenendaal signed the request as "NL, Philips IP&S, A. Groenendaal 908." NL, Philips IP&S refers to the Netherlands Philips IP&S. M. van Velzen, H.J.R. Schmitz, and S. Cumpson all signed letters accompanying subsequently filed items on July 15, 2008; January 1, 2010; and December 22, 2010 respectively. In each case, the letters were signed as "NL, Philips IP&S, [name and number of signor]." Additionally, H.C.P.M. van Iersel signed a December 22, 2010 reply to communication from the Examining Division. As evidenced by the prosecution file histories, none of these individuals were involved in any way in the prosecution of the '192 Patent in the U.S., nor were they identified in Garmin's proposed counterclaim.

On December 22, 2010, Daniel Damen requested a transfer of the EU application to be in the name of Petronella Verweij as the previous representatives (Schouten and Groenendaal) had left NL Philips IP&S. From this point on, all communications from the EPO regarding the application were addressed to Ms. Verweij in The Netherlands, and she

[1] The file histories are presented in reverse chronological order. Also, in locating documents by date in the EU file history, recall that the European date convention is "Day-Month-Year" rather than "Month-Day-Year."

signed all of Philips's correspondence with the EPO regarding the application. Thus, Ms. Verweij was the only Philips representative listed on any documents from the time the Yamamoto reference was identified by the EPO (June 30, 2014) to the time the application was withdrawn (April 7, 2015). As indicated by the file histories, Ms. Verweij also was not involved in any way in the prosecution of the '192 Patent in the U.S., and Garmin, while mentioning her in the proposed counterclaim, has not accused her of any wrongdoing or even being involved in the US prosecution handled by US Philips IP&S.

As is evident from the prosecution file histories, the five US prosecutors specifically accused by Garmin of inequitable conduct (Yan Glickber, Kathleen Asher, Patricia Heim, Edward Goodman, and Jeanne Rusciano) were never involved in the prosecution of the European application and none of their names appear in any of the documents in the European application's file history. Nor does Garmin allege otherwise. There is no indication that any of these individuals were ever aware of the Yamamoto reference or its disclosure in the European application, much less that they believed it was materiel and deliberately withheld the reference from the USPTO.

### C. A Simple Timeline Shows The Disconnect Between Events In The EU And The US

The timeline graphic below is based on the EU and US application file histories. As can be seen, the original priority application was filed in 2005, and an International Search Report issued in 2007 in the EU case. That International Search Report did not reference Yamamoto, but contained other prior art. In 2008, the US application was filed, and the International Search Report (without Yamamoto, which would not yet be identified in the EU case for another six years) was disclosed to the US Patent Office as part of the initial filing in the US, it having been part of the priority claim in 2008. US prosecution then proceeded separately on its own track with an entirely different set of attorneys than those that were prosecuting the EU application in Europe.

There was then a "changing of the guard" in the EU in 2010, with the original prosecutors departing, and a single patent prosecutor – Ms. Verweij – taking over the case. (*See* December

22, 2010 correspondence.) This change-up undoubtedly would have caused further disconnect of the EU case, if there was any at all in the first place. It was not until mid-2014 – six years after the filing of the US application – that Yamamoto was cited for the very first time among other prior art in the EU prosecution. (*See* June 30, 2014 correspondence from the European Patent Office.) By this point, the US application had already been separately prosecuted for many years and was getting close to issuance. The EU prosecuting attorney, Ms. Verweij, never commented on Yamamoto. A few months later, she withdrew the EU application. (*See* April 7, 2015 Vereiji Letter and Attached Listing of Withdrawn Patent Applications.) That withdrawal was a simple expediency, and there is no evidence that it is was done in reaction to Yamamoto (which Philips does not believe is invalidating). Indeed, as shown in the EU file history – and as a testament to just how many patent applications Philips manages at any given time – Ms. Verweij's withdrawal of a the EU application was part of a pro forma withdrawal of *28 other applications*, among which the particular application at issue here received no special attention, and was nothing more than a number on a long laundry list. (*Id.*) This is suggestive on its face that Ms. Verweij herself paid no special attention to this one patent application among so many.

As is most relevant for the present purposes, Garmin cannot allege any set of facts showing that the US prosecuting attorneys ever even knew about the Yamamoto reference, much less that the US prosecutors had deemed it to be material and intentionally withheld it.




## D. The Citation Of The Japanese Reference Does Not Plausibly Suggest Knowledge Of Yamamoto

Garmin observes that the US prosecutors of the '192 Patent application cited a prior art reference – JP 2003-102692A ("'692 Prior Art") – that other members of the Philips IP&S team had successfully overcome in the separate prosecution of a Japanese patent application. (Proposed Pleading, ¶¶ 103-106.) From this, Garmin makes the following speculative leap of

reasoning: (1) the US prosecutors knew the details of the separate prosecution occurring in Japan (as opposed to simply having found the ’692 Prior Art independently on their own), (2) this means that the US prosecutors must have been closely monitoring foreign prosecution at all relevant times, (3) the US prosecutors therefore must have also been closely monitoring the EU application in which Yamamoto was cited, and (4) the US prosecutors must have known about the Yamamoto reference when it was cited in June 2014, believed it was material, and decided to deliberately withhold it to deceive the US Patent Office. (*Id.*, ¶¶ 119-120.) This tortured chain of purely speculative extrapolations is a bridge too far under *Exergen*.

## IV. THE LAW COMPELS DENIAL OF GARMIN’S MOTION AS FUTILE

### A. *Exergen* And Its Progeny Are Directly On Point

The *Exergen* case itself is remarkably on point to the present facts, and compels denial of Garmin’s Motion. The allegation in *Exergen* was that “Exergen, its agents and/or attorneys” were aware of purportedly material prior art from related patent prosecution, but failed to disclose it in the subject patent application. 575 F.3d at 1326. However, the movant failed to allege that any of the specific attorneys prosecuting the application within the Exergen organization as a whole knew of the cited prior art, much less that they would have deemed it material and intentionally withheld it. The court explained:

> …the circumstances that SAAT has alleged, even if true, do not plausibly suggest any ‘deliberate decision to withhold a known material reference’ or to make a knowingly false misrepresentation--a necessary predicate for inferring deceptive intent. *Molins*, 48 F.3d at 1181 (stating that the evidence ‘must show that the applicant made a deliberate decision to withhold a known material reference’). SAAT's purported basis for inferring deceptive intent is that Exergen had cited the '998 patent when prosecuting the '205 patent but then failed to cite it when prosecuting the '685 patent. **The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is**

> **insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct.** Indeed, **SAAT's pleading does not contain specific factual allegations to show that the individual who had previously cited the '998 patent knew of the specific information that is alleged to be material to the '685 patent and then decided to deliberately withhold it from the relevant examiner**. In the absence of such allegations, the district court was correct not to draw any permissive inference of deceptive intent with regard to the '998 patent, lest inequitable conduct devolve into 'a magic incantation to be asserted against every patentee' and its 'allegation established upon a mere showing that art or information having some degree of materiality was not disclosed.' *FMC*, 835 F.2d at 1415. *See Burlington Coat Factory Sec. Litig*., 114 F.3d at 1418 (Alito, J.) ('To allow plaintiffs and their attorneys to subject companies to wasteful litigation based on the detection of a few negligently made errors found subsequent to a drop in stock price would be contrary to the goals of Rule 9(b), which include the deterrence of frivolous litigation based on accusations that could hurt the reputations of those being attacked.').

*Exergen*, 575 F.3d at 1331 (emphasis added).

So too here – just as in *Exergen* – Garmin's flawed pleadings relies on blanket allegations as to "Philips IP&S," and improperly asks the Court to allow an inequitable conduct claim to proceed without any plausible showing of knowledge of the purportedly material prior art on the part of the patent prosecutors handling the '192 Patent application. *See also Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883 (GEB), 2010 WL 3908036, at *7-8 (D. N.J. Jan. 4, 2016) (specifically naming individuals in allegation is not particular enough to satisfy the "who" requirement when there is no suggestion that the individual had knowledge of the prior art); *BlackBerry Ltd. v. Typo Prods LLC*, 14-cv-00023-WHO, at *2 (N.D. Cal. May 8, 2014) (granting motion to strike or dismiss inequitable conduct counterclaim that did not contain

factual allegations that any of the individuals named knew and withheld material information).

### B. The ITC Recently Granted Philips's Motion To Strike An Even More Elaborate Pleading

Garmin's Motion fails to reference the fact that in the parties' currently pending parallel litigation in the International Trade Commission – *Certain Wearable Monitoring Devices, Systems, and Components Thereof*, ITC Investigation No. 337-TA-1190, "ITC Action" – the ITC recently ruled that the Respondents' pleadings did not plausibly state a claim for inequitable conduct under Rule 9(b), despite the fact that those pleadings were even more elaborate than those proffered by Garmin in the present case. A copy of the May 6, 2020 ITC decision is attached as Ciardullo Exhibit 1. Garmin was aware of the ITC's ruling since Garmin is one of the ITC Respondents, but apparently believed that this Court would be more permissive than the ITC in allowing such pleadings.

The ITC ruling summarizes the relevant factual allegations at pages 3-4. In short, the Respondents alleged that a Philips patent prosecutor – Frank Keegan – obtained the patent-in-suit (a patent not at issue in the present case) by failing to disclose purportedly material prior art that had been cited adversely in separate European and Japanese patent prosecution. Respondents further alleged Mr. Keegan was aware of this prior art because he himself had cited that same prior art in a different patent application. The ITC ruled, consistently with *Exergen,* that the knowledge of other European and foreign Philips IP&S employees is not plausibly imputed to the US prosecuting attorney, and that even if Mr. Keegan had nominally been aware of the prior art in question, the pleadings failed to establish that he would have appreciated their import and deliberately withheld them. (ITC Ruling, p. 5-7.) The court dismissed the claim with prejudice because it was futile under the *Exergen* standard.

Importantly, the ITC Respondents' allegations went well beyond those made by Garmin in the present case, yet the ITC still deemed them insufficient under *Exergen*. Specifically, the ITC Respondents had been able to allege that the patent prosecutor in question specifically knew of the prior art since he had himself cited it before contemporaneously. In the present case, by contrast, Garmin cannot even plead that the US patent prosecutors had ever heard of the

Yamamoto reference, and asks the Court to infer such knowledge on the basis of an automated internal docket numbering system. This is beyond any plausible inference the Court should draw, not only in view of *Exergen*, but also considering that Garmin's ultimate burden of proof would be clear and convincing evidence.

### C. **The Court Should Not Indulge Garmin's Tactical Maneuvering To Create A Wasteful Sideshow**

If Garmin wishes to argue that the '192 Patent is invalid in view of the Yamamoto reference, that is its prerogative, and while Philips disagrees with Garmin on that issue, at least it actually concerns the merits of the case. By contrast, the Court should not allow Garmin to hijack this litigation with an unnecessary sideshow over a trumped-up inequitable conduct claim, whose transparent purpose is not to advance the merits, but to improperly multiply the proceedings as a purely tactical maneuver. The *Therasense* court articulated well the concerns about wasteful litigation spawned by inequitable conduct claims. If this Court were to allow these claims to proceed, they would result in significant waste of resources and prejudicial distraction from the merits.[2]

Beyond that, the Court would create an unfortunate legal precedent: that patent attorneys working within large patent prosecution departments of major technology companies are subject to being accused of inequitable conduct every time a piece of purportedly material prior art is cited in an application handled by one set of attorneys, but happens to not be cited in a different application handled by a different set of attorneys. Such a precedent would be directly at odds with the express reasoning of *Exergen* and *Therasense*, and unfair to the patent prosecution community.

---

[2] Notably, as Garmin observes in its Motion, Garmin has already propounded written discovery asking for document concerning the purported inequitable conduct of the US patent prosecutors named in the proposed counterclaim. (Motion, p. 3 and Ex. C.) Garmin incorrectly implies that Philips is withholding documents when in fact Philips's responses (within Ex. C) state that all relevant non-privileged documents concerning the patent prosecution will be produced. Philips replied as such for the simple reason that it was already in the midst of preparing a production of non-privileged documents pertaining to the patent prosecution.

## V. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE PLEADINGS FOR FAILURE TO STATE A CLAIM

Philips notes that some courts have sought to distinguish the futility standard under Rule 15 and the pleading standard under Rule 12(b)(6). *See, e.g., Idearc Media, LLC v. Palmisano & Assocs., P.C.*, No. CV 09-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 52052, at *8-9 n.2 (D. Ariz. Apr. 12, 2012). While Philips disagrees that such a distinction should be drawn (and understands Garmin to be agreement on that point based on the parties' meet and confer discussions), to the extent that the Court were inclined to nominally allow Garmin's proposed amendment under Rule 15, then Philips here moves in the alternative to dismiss any such allowed pleading under Rule 12(b)(6) in order to save the parties and the Court the trouble and delay of a separate second round of briefing on a future motion to dismiss. For all the same reasons that Philips has articulated above, the proposed counterclaim fails to plausibly allege inequitable conduct in view of Rule 9(b) and *Exergen*.

## VI. CONCLUSION

For the foregoing reasons, Philips respectfully requests that Garmin's Motion to Amend be denied, or alternatively that the Amended Counterclaim be dismissed.

DATED: July 31, 2020

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Jean-Paul Ciardullo*

Jean-Paul Ciardullo, CA Bar No. 284170
jciardullo@foley.com
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

Eley O. Thompson (*pro hac vice*)
ethompson@foley.com
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312-832-4359

Facsimile: 312-83204700

Ruben J. Rodrigues (*pro hac vice*)
rrodrigues@foley.com
Lucas I. Silva (*pro hac vice*)
lsilva@foley.com
John W. Custer (*pro hac vice*)
jcuster@foley.com
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: (617) 342-4000
Facsimile: (617) 342-4001

*Attorneys for Plaintiff*
*Philips North America LLC*