JEAN-PAUL CIARDULLO, CA Bar No. 284170
  jciardullo@foley.com
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile:   213-486-0065

ELEY O. THOMPSON (*pro hac vice*)
  ethompson@foley.com
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312-832-4359
Facsimile:   312-83204700

RUBEN J. RODRIGUES (*pro hac vice*)
  rrodrigues@foley.com
LUCAS I. SILVA (*pro hac vice*)
  lsilva@foley.com
JOHN W. CUSTER (*pro hac vice*)
  jcuster@foley.com
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: (617) 342-4000
Facsimile: (617) 342-4001

*Attorneys for Plaintiff*
*Philips North America LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Philips North America LLC,<br><br>*Plaintiff*,<br><br>*vs.*<br><br>Garmin International, Inc.<br>Garmin USA, Inc. and Garmin Ltd.,<br><br>*Defendants*. | Case No. 2:19-cv-06301-AB-KS<br><br>**PHILIPS NORTH AMERICA LLC's NOTICE OF MOTION AND MOTION UNDER RULE 54(b) TO ENTER FINAL JUDGMENT AS TO COUNT I FOR INFRINGEMENT OF U.S. PATENT NO. 6,013,007**<br><br>Date:        December 4, 2020<br>Time:       10:00AM<br>Crtrm:     7B (350 West First Street) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 4, 2020 at 10:00 AM, or as soon thereafter as the matter may be heard before Honorable André Birotte Jr., in Courtroom 7B of the United States District Court, Central District of California, located at 350 West First Street, Los Angeles, CA 90012, Plaintiff Philips North America LLC ("Philips") will, and hereby does, respectfully move pursuant to Fed. R. Civ. P. 54(b) to enter final judgment with respect to Count I of Philips's Amended Complaint asserting infringement of U.S. Patent No. 6,013,007 ("'007 Patent").

The grounds for the Motion are that the Court's August 28, 2020 Claim Construction Order (Dkt. 102) found that the asserted claims of the '007 Patent are invalid for indefiniteness, resulting in the complete resolution of Philips's cause of action for infringement of the '007 Patent. Because the '007 Patent cause of action is severable and distinct from Philips's remaining causes of action, there is no just reason to delay entry of a final judgment on that cause of action so that Philips may appeal.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and on such other and further evidence as may properly be before this Court at the hearing on the Motion.

This Motion is made following the conference of counsel which took place on October 12, 2020.

DATED: November 4, 2020          **FOLEY & LARDNER LLP**

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo
Eley O. Thompson
Ruben J. Rodrigues
Lucas I. Silva
John W. Custer
*Attorneys for Philips North America, LLC*

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................1

II.     THE '007 PATENT CAUSE OF ACTION IS SEVERABLE AND
        DISTINCT ...........................................................................................1

III.    THE CLAIM CONSTRUCTION ORDER HAS COMPLETELY
        DISPOSED OF THE '007 PATENT INFRINGEMENT COUNT I ....................3

IV.     APPLICABLE LAW .............................................................................5

        A.      RULE 54(B) .............................................................................5

        B.      RULE 54(B) DISTINGUISHED FROM 28 U.S.C. § 1292 ........................6

V.      ENTRY OF JUDGMENT UNDER RULE 54(B) IS APPROPRIATE.................9

        A.      PHILIPS'S MOTION IS TIMELY .................................................9

        B.      THERE IS NO JUST REASON FOR DELAY ............................................9

VI.     CONCLUSION....................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
 No. 18-cv-02791-EMC, 2018 U.S. Dist. LEXIS 188327 (N.D. Cal. Nov. 2, 2018) ................................................................................................................ 10

*Amtel Corp. v. Information Storage Devices, Inc.*,
 198 F.3d 1374 (Fed. Cir. 1999) ........................................................................ 5

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
 296 F.3d 1106 (Fed. Cir. 2002) ........................................................................ 4

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
 446 U.S. 1 (1980) .............................................................................................. 5

*Depuydt v. FMC Corp.*,
 No. 92-16729, 1994 U.S. App. LEXIS 25256 (9th Cir. Sep. 7, 1994) ............ 9

*Fonar Corp. v. GE*,
 107 F.3d 1543 (Fed. Cir. 1997) ........................................................................ 4

*James v. Price Stern Sloan*,
 283 F.3d 1064 (9th Cir. 2002) ..................................................................... 8, 9

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
 424 F.3d 1324 (Fed. Cir. 2005) ........................................................................ 4

*Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*,
 194 F.3d 1250 (Fed. Cir. 1999) ........................................................................ 4

*Paragon Podiatry Lab. v. KLM Lab.*,
 No. CV 90 - 6049 RG, 1991 U.S. Dist. LEXIS 21696 (C.D. Cal. July 3, 1991) ............................................................................................................... 10

*Seed Co. v. Westerman*,
 2019 U.S. Dist. LEXIS 119067, 2019 WL 3222412 (D.D.C. 2019) ............... 9

*Sun Pharm. Indus. v. Eli Lilly & Co.*,
 No. 07-CV-15087, 2009 U.S. Dist. LEXIS 100947 (E.D. Mich. Oct. 29, 2009) ........................................................................................................... 10, 11

4838-2194-2991.3

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    No. C 12-6467 MMC, 2015 U.S. Dist. LEXIS 92769 (N.D. Cal. July 16,
    2015) ...................................................................................................................9

*Typeright Keyboard Corp. v. Microsoft Corp.*,
    No. 98-1358-IEG (LAB), 2002 U.S. Dist. LEXIS 27466 (S.D. Cal. Nov.
    19, 2002) ..............................................................................................................9

**Statutes**

28 U.S.C. § 1292 .................................................................................6, 7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 54(b) .....................................................1, 5, 6, 7, 8, 9, 10, 11, 12

## I.     INTRODUCTION

Plaintiff Philips North America LLC ("Philips") hereby respectfully moves pursuant to Fed. R. Civ. P. 54(b) for the Court to enter final judgment on Count I of Philips's Amended Complaint asserting infringement of U.S. Patent No. 6,013,007 ("'007 Patent"). The Court's August 28, 2020 Claim Construction Order (Dkt. 102) found the asserted claims of the '007 Patent invalid for indefiniteness, thereby completely resolving the '007 Patent cause of action and removing it entirely from the case. Because Philips's cause of action with respect to the '007 Patent is severable and distinct from Philips's remaining causes of action on unrelated patents in this case – indeed, the '007 Patent could have been asserted as part of a completely separate parallel lawsuit – there is no just reason to delay entry of judgment so that Philips may appeal the determination of invalidity as to that patent. The remainder of the District Court case can proceed to trial unaffected, particularly since any decision from the Federal Circuit regarding the '007 Patent would be well over a year away, and any remand would proceed separately on its own.

## II.     THE '007 PATENT CAUSE OF ACTION IS SEVERABLE AND DISTINCT

Philips's operative First Amended Complaint in this action was filed on December 9, 2019, and asserts six claims of infringement on six different patents. (Dkt. 45.) While some of the patents are related and share the same inventors, the '007 Patent stands alone. The '007 Patent was invented by Gary Miller Root and Frank van Hoorn (who are not inventors on any of the other five asserted patents), and generally claims a system for employing a stored series of GPS waypoints that have associated time stamps in order to provide athletic performance feedback data to an athlete. ('007 Patent, Dkt. 45-1, Claim 1.) Thus, for example, the patent would relate to (among other things) using a wearable device to track a runner's pace and provide live updates to the runner about how long on average they are taking to run each mile. The Amended Complaint asserts infringement against the GPS-based performance feedback functionalities of several of Garmin's products (Amended Compliant, Count I). These accused features are not implicated by Philips's other infringement claims in this case.

It is important to recognize that each of the patents in this case are focused different

RULE 54(b) MOTION
CASE NO. 2:19-cv-06301-AB-KS

4838-2194-2991.3

*functions and capabilities* that may be common to many of the Garmin products.  The '007 Patent infringement claims target the GPS-based athletic performance feedback functions that are present in a number of Garmin products.  Philips separately accuses entirely different functions of infringing Philips's other unrelated patents, and some of those functions may also exist in the same Garmin products that contain the accused GPS-based athletic performance feedback functionality.  Thus, while the same Garmin products may be nominally implicated across multiple of Philips's various infringement claims, they are implicated for very different reasons concerning entirely different functionalities, and the GPS-based athletic performance feedback function is only at issue with respect to the '007 Patent.

This is evident from the face of the Amended Complaint and the patents themselves.

Count II asserts infringement of U.S. Patent No. 7,088,233 ("'233 Patent"), which was invented by Raymond J. Menard, and which is directed to "[a] personal and/or institutional health and wellness communications system, which may be used for a variety of emergency and non-emergency situations using two-way communications devices and a bi-directional communication network." (Dkt. 45-2, '233 Patent at Abstract.)  The Amended Complaint identifies the accused functionalities as pertaining to, for example, the Garmin Connect App and how it wirelessly communicates between a user's smartphone and a Garmin device to gather data such as heartrate.  (Amended Complaint, Count II.)  A GPS device that provides GPS-based athletic performance feedback data is not the focus of the count.

Count III asserts infringement of U.S. Patent No. 8,277,377 ("'377 Patent"), which was invented by Roger J. Quy, and which is generally directed to a "wireless monitoring of exercise, fitness, or nutrition by connecting a web-enabled wireless phone to a device which provides exercise-related information, including physiological data and data indicating an amount of exercise performed." (Dkt. 45-3, '377 Patent at Abstract.) The accused functionalities relate to, for example, systems that use a smartphone applications that receive data from a Garmin device and calculated responses from an internet server.  (Amended Complaint, Count III.)  A GPS device that provides GPS-based performance feedback data is not the focus of the count.

Count V asserts infringement of U.S. Patent No. 9,314,192 ("'192 Patent"), which was

RULE 54(b) MOTION
CASE NO. 2:19-cv-06301-AB-KS

invented by Annelies Goris and Maarten Peter Bodlaender, and which is generally directed to "[a] measuring system compris[ing] a sensor arranged to be attached to a subject for obtaining a measured value representing a physical or a physiological quantity of the subject." (Dkt. 45-5, '192 Patent at Abstract.) The infringement claims are generally directed to body motion sensors. (Amended Complaint, Count V.) A GPS device that provides GPS-based performance feedback data is not the focus of the count.

Count VI asserts infringement of U.S. Patent No. U.S. Patent No. 9,801,542 ("'542 Patent"), which was invented by Bao Tran and Ha Tran, and which is generally directed to a "heart monitoring system for a person [that] includes one or more wireless nodes; and wearable appliance in communication with the one or more wireless nodes, the appliance monitoring vital signs." (Dkt. 45-6, '542 Patent at Abstract.) The accused functionalities relate generally to physiological reading analysis. (Amended Complaint, Count VI.) A GPS device that provides GPS-based performance feedback data is not the focus of the count.[1]

## III.   THE CLAIM CONSTRUCTION ORDER HAS COMPLETELY DISPOSED OF THE '007 PATENT INFRINGEMENT COUNT I

The Court's August 28, 2020 Claim Construction Order (Dkt. 102) found that all asserted claims of the '007 Patent are invalid for indefiniteness. Specifically, the Court first construed the claims to include athletic performance feedback data beyond just speed, pace, and distance, such as calories burned. (Order, p. 8-9.) Next, the Court concluded that the patent specification contained no corresponding structure that could support providing such performance feedback data. (*Id.*, p. 9-10.) This finding of invalidity completely disposes of the entirety of Philips's Count I for infringement of the '007 Patent in this case.

While it is not ultimately relevant to the resolution of this Motion, Philips notes that it has a meritorious basis to seek appeal and that the issues for appellate review are broadly important in patent law. Specifically, when construing a means plus function claim, the court should not

---

[1] Count IV of the complaint concerned U.S. Patent No. 6,976,958, the asserted claims of which have been disclaimed at the U.S. Patent and Trademark Office and are no longer asserted by Philips in this matter. The parties are presently conferring on the best approach to amend the record to reflect that the '958 Patent is no longer at issue.

alter the stated function.  *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) ("The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim"); *JVW Enterprises, Inc. v. Interact Accessories, Inc.,* 424 F.3d 1324, 1331 (Fed. Cir. 2005)("The first construction violated two tenets governing the determination of function in a means-plus-function limitation. First, a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim'") In doing so, the court alters the relationship between specification and the claim that generates consequents at odds with Section 112(6) which provides for functional claiming in a means-plus-function format. *Id.* at 1258 ("An error in identification of the function can improperly alter the identification of structure in the specification corresponding to that function").  Based on the statement of the function, the claims are limited to the structural embodiments in the specification and any embodiments without sufficient structure are excluded from the scope of the claim  *Fonar Corp. v. GE*, 107 F.3d 1543, 1551-52 (Fed. Cir. 1997) ("The '966 specification discloses use of a generic gradient waveform. Although it states that other waveforms may be used, it fails to specifically identify those waveforms. Thus, under section 112, P 6, claim 12 is limited to use of a generic gradient waveform and its equivalents."); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc*., 296 F.3d 1106, 1113-14 (Fed. Cir. 2002) ("Alternative embodiments may disclose different corresponding structure, and the claim is valid even if only one embodiment discloses corresponding structure."). Thus, if a court modifies the function of the claim to require specific functions based on embodiments in the patent (like calories burned), the court can generate an erroneous indefiniteness invalidity finding by limiting the functional term of the claim instead of limiting the structural term of the claim, which would result in a definite valid claim limited in scope to sufficiently supported structures.

Here, Philips had presented unrebutted expert testimony that a supporting structure was adequately disclosed for the athletic performance feedback data (e.g., distance, speed, and pace), and Philips would argue that such unrebutted testimony should have sufficed to support the validity of the claims.  *Amtel Corp. v. Information Storage Devices, Inc*., 198 F.3d 1374, 1382

(Fed. Cir. 1999) (reversing grant of summary judgment of indefiniteness of means-plus-function claim for failing to consider unrebutted expert testimony with regard to the appropriate structure).

In any event, a full exposition of Philips's future arguments on appeal is not required here. The only question presently before the Court is the purely procedural one of whether there is any just reason why an appeal should be delayed.

## IV.   APPLICABLE LAW

### A.   Rule 54(b)

Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Supreme Court in *Curtiss-Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 7-8 (1980) explained the 2-step test that courts apply in assessing whether to enter judgment under Rule 54(b):

> A district court must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' 351 U.S., at 436.
>
> Once having found finality, the district court must go on to

determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a 'dispatcher.' *Id*., at 435. It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. Ibid. This discretion is to be exercised 'in the interest of sound judicial administration.' *Id*., at 437.

Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved.  Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' *Id*., at 438. It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

Here, there can be no debate that the Claim Construction Order's invalidation of the '007 Patent claims is a "final judgment" on Count I of the Amended Complaint.  With respect to the question of whether there is any just reason to delay, as shown below, the present case is a quintessential example of one for which entry of judgment pursuant to Rule 54(b) is warranted.

## B.    Rule 54(b) Distinguished From 28 U.S.C. § 1292

There is confusion among many practitioners regarding the distinction between Rule 54(b) and 28 U.S.C. § 1292, both of which apply to interlocutory appeals, but under different circumstances.  Section 1292 requires rigorous review, whereas Rule 54(b) is a "routine"

application of the final judgment rule where an entire claim had been completely disposed of. The Ninth Circuit has explained the distinction as follows, and discussed the markedly different standards of review:

> Some of our cases use the phrase 'Rule 54(b) certification.' …This is a misnomer born of confusion between Rule 54(b) and 28 U.S.C. § 1292(b), only the latter of which requires a certification. The two procedures apply to different situations. *See generally* 10 Charles Alan Wright et al., Federal Practice and Procedure § 2658.2, at 89-95 (1998) [hereinafter Wright & Miller]. Rule 54(b) applies where the district court has entered a final judgment as to particular claims or parties, yet that judgment is not immediately appealable because other issues in the case remain unresolved. Pursuant to Rule 54(b), the district court may sever this partial judgment for immediate appeal whenever it determines that there is no just reason for delay. A court of appeals may, of course, review such judgments for compliance with the requirements of finality, but accords a great deference to the district court. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797-98 (9th Cir. 1991).

> By contrast, section 1292(b) addresses the situation where a party wishes to appeal an interlocutory order, such as pertaining to discovery, [] denying summary judgment, [], denying a motion to remand, [], or decertifying a class, []. Normally, such interlocutory orders are not immediately appealable. In rare circumstances, the district court may approve an immediate appeal of such an order by certifying that the order 'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.' 28 U.S.C. § 1292(b). Even where the district court makes such a certification, the court of appeals nevertheless has

discretion to reject the interlocutory appeal, and does so quite frequently. See 16 Wright & Miller § 3929, at 363.

Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly. This explains the reasons for the specific form of the certification required of the district court and de novo review thereof by the court of appeals. *See, e.g., In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1982). By contrast, a Rule 54(b) severance is consistent with the final judgment rule because the judgment being severed is a final one, whose appeal is authorized by 28 U.S.C. § 1291. Referring to a Rule 54(b) severance order as a "certification" misleadingly brings to mind the kind of rigorous judgment embodied in the section 1292(b) certification process. In reality, issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances. *See, e.g., In re First T.D. & Inv., Inc.*, 253 F.3d 520, 531-33 (9th Cir. 2001); *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991).

*James v. Price Stern Sloan*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

The high bar of Section 1292 is in major part intended to save the appellate courts from having to contend with piecemeal appeals of different aspects of the same case. For example, if instead of invalidating the asserted claims of the '007 Patent, the Court had merely construed them in a way that Philips had found objectionable, Philips would not have been able to seek entry of judgment under Rule 54(b), and would instead have ordinarily been required to take the case to a final judgment on all claims before any appeal. Likewise, where a plaintiff asserts multiple causes of action that are all based on an assessment of the same set of operative facts (for example, pleading in the alternative claims for fraud and intentional interference with contract that arise from the same set of facts), the dismissal of one of those interrelated causes of action as a matter of law prior to trial would not normally form the basis for entry of judgment

under Rule 54(b) given that resolution of factual disputes concerning the still-pending cause of action would directly affect assessment of the dismissed cause of action.

As discussed below, none of these concerns are implicated here.

## V.   ENTRY OF JUDGMENT UNDER RULE 54(b) IS APPROPRIATE

### A.   Philips's Motion Is Timely

As a threshold matter, Philips notes that its present Motion is timely.  Indeed, Rule 54(b) sets no deadline for seeking entry of judgment.  *Seed Co. v. Westerman*, 2019 U.S. Dist. LEXIS 119067, *15-16, 2019 WL 3222412 (D.D.C. 2019) ("Rule 54(b), unlike a myriad of other provisions in the civil rules, contains no express temporal restrictions.") (citing *Bank of New York v. Hoyt*, 108 F.R.D. 184, 185 (D.R.I. 1985)); *see also Depuydt v. FMC Corp.*, No. 92-16729, 1994 U.S. App. LEXIS 25256, at *5-6 (9th Cir. Sep. 7, 1994) (affirming decision to certify for appeal five months after ruling entered).  Here, apart from the fact that the statute contains no time restriction, Philips has filed its Motion within two months of the Claim Construction Order, having taken the intervening time (while still in the midst of ongoing litigation) to (1) diligently research the relevant procedural issues surrounding Rule 54(b) as distinguished from 28 U.S.C. § 1292 (discussed below), (2) assess and research Philips's intended arguments on appeal, and (3) confer with opposing counsel more than seven days prior to filing as required by the Local Rules.

### B.   There Is No Just Reason For Delay

None of the concerns about "piecemeal appeals" are implicated by the present case, which – as the Ninth Circuit put it in *James* – simply involves a "routine" application of Rule 54(b).  *See Typeright Keyboard Corp. v. Microsoft Corp.*, No. 98-1358-IEG (LAB), 2002 U.S. Dist. LEXIS 27466, at *13 (S.D. Cal. Nov. 19, 2002) ("Rule 54(b) certification is appropriate and common in patent infringement cases in which a district court has granted summary judgment of invalidity."); *Synopsys, Inc. v. Mentor Graphics Corp.*, No. C 12-6467 MMC, 2015 U.S. Dist. LEXIS 92769, at *2-3 (N.D. Cal. July 16, 2015) (entering Rule 54(b) judgment as to patents that were held invalid on summary judgment, where other patents still remained in the case); *Paragon Podiatry Lab. v. KLM Lab.*, No. CV 90 - 6049 RG (JRx), 1991 U.S. Dist. LEXIS

21696, at *5-6 (C.D. Cal. July 3, 1991) (entering Rule 54(b) judgment as to patent that was held invalid on summary judgment, where other claims still remained in the case); *Sun Pharm. Indus. v. Eli Lilly & Co.*, No. 07-CV-15087, 2009 U.S. Dist. LEXIS 100947, at *5-7 (E.D. Mich. Oct. 29, 2009) (entering judgment under Rule 54(b) in a case involving two patents where one was found invalid on summary judgment).

The '007 Patent cause of action is severable and independent from the others, and indeed could have been brought in parallel as its own separate lawsuit, having been joined with the other five patent claims in this case only as a matter of convenience.  To illustrate this, if Philips had separately sued Garmin in a district court in a different State for infringement of the '007 Patent (while suing on the other five patents here in California), and if the '007 Patent had been invalidated in the other case, there would be no question that an appeal could be immediately taken in that other case notwithstanding the ongoing California case.  The happenstance of the unrelated patent claims having been brought together as part of the same lawsuit – a decision that was intended to increase judicial efficiency – should not paradoxically hamstring Philips's ability to promptly appeal the '007 Patent invalidation.

Partial final judgment was entered under analogous circumstances in *23andMe, Inc. v. Ancestry.com DNA, LLC*, No. 18-cv-02791-EMC, 2018 U.S. Dist. LEXIS 188327, at *5-6 (N.D. Cal. Nov. 2, 2018), where the plaintiff's patent infringement claims were dismissed while parallel claims remained pending, and wherein the court recognized the hardship the plaintiff would suffer were a cloud cast over the validity of a patent:

> In the instant case, there is no real dispute that the Court is dealing with a 'final judgment' with respect to 23's patent infringement claims. The only issue is whether there is 'no just reason for delay.'  Fed. R. Civ. P. 54(b). The Court finds that there is no just reason for delaying entry of a final judgment on the patent infringement claims. The claims are factually and legally distinct from the false/misleading advertising claims and the declaratory judgment trademark claims. *See* Moore's § 54.23[1][b] (stating that, 'if the unadjudicated claims are closely related

to those decided, the district court should generally refuse to enter a judgment under Rule 54(b)' but, if 'the claims are sufficiently distinct so that duplicative appellate review will be avoided, the court of appeals will generally find that entry of a Rule 54(b) judgment was not an abuse of discretion'). Also, a delay in the entry of judgment would cause some hardship or injustice to 23; now that the Court has determined that 23's patent is invalid as unpatentable, that ruling casts a cloud on 23's ability to assert the patent against other entities or persons.

Here, while Philips suffers plain hardship in having just such a cloud placed over its ability to enforce the '007 Patent, that is particularly so given that Philips is presently asserting the '007 Patent in a litigation pending against Fitbit in the District of Massachusetts.  Garmin cannot show any prejudice whatsoever from entry of judgment under Rule 54(b).  Indeed, the appeal of the '007 Patent cause of action presents a narrow question concerning the law of indefiniteness of means-plus-function claims, and will be relatively straightforward for the parties to brief.  *See Sun Pharm*., 2009 U.S. Dist. LEXIS 100947, at *5-7 (unconcerned with additional work involved in appellee having to engage in appellate briefing).

At the same time, the Federal Circuit would almost certainly not rule on the appeal until after trial on other Philips's other patents in this Court has already taken place, such that any remand on the '007 Patent could conveniently proceed separately.  Trial has been set in this case for July 27, 2021.  (Dkt. 108.)  By the time the present Motion is decided, and (if the Motion were granted) a Notice of Appeal filed within 30 days thereafter, it may already be 2021, and the average time for a Federal Circuit appeal is generally estimated to be well over a year,[2] such that any remand would likely not occur until 2022.

Meanwhile, the immediate appeal would remove a cloud over the patent in other litigations such as the case in the District of Massachusetts and potential licensing.  The unnecessary extension of such uncertainty as to the '007 Patent presents plain, material and

---

[2] http://www.cafc.uscourts.gov/sites/default/files/the-court/statistics/06_Med_Disp_Time_MERITS_Line_Chart.pdf

unnecessarily prejudice to Philips.

During the parties' pre-filing meet and confer on this Motion, Garmin was unable to identify any prejudice whatsoever, and instead indicated only that it opposed because, in essence, it believes the Court should arbitrarily delay appeal in light of the fact that the '007 Patent has now expired. Philips is not aware of any law supporting the proposition that the owner of an expired patent is less entitled to a prompt appeal than the owner of an un-expired patent. Indeed, while Philips could no longer seek an injunction for infringement of the '007 Patent, it could still very much seek past damages if the invalidation were overturned, and is in fact doing so in a co-pending litigation against Fitbit. Philips will be arbitrarily and unnecessarily prejudiced in having to wait until final judgment on a group of unrelated patents to begin its appeal as to the '007 Patent, since that would postpone by many months (or longer) a final non-appealable determination with respect to the '007 Patent.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Philips respectfully requests that the Court enter a judgment pursuant to Rule 54(b) as to Count I for infringement of the '007 Patent.

DATED:  October 29, 2020     **FOLEY & LARDNER LLP**

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo
Eley O. Thompson
Ruben J. Rodrigues
Lucas I. Silva
John W. Custer
*Attorneys for Philips North America, LLC*