LAMKIN IP DEFENSE
RDL@LamkinIPDefense.com
Rachael D. Lamkin (246066)
One Harbor Drive, Suite 304
Sausalito, CA 94965
(916) 747-6091 Telephone

Michelle L. Marriott (*pro hac vice*)
michelle.marriott@eriseip.com
Erise IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211
(913) 777-5600 Telephone
(913) 777-5601 Facsimile

Attorneys for Defendants
Garmin International, Inc. and Garmin Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Philips North America, LLC, | Case No.  2:19-cv-06301-AB (KSx) |
| Plaintiff, Counterclaim-Defendant | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 54(B) MOTION** |
| Garmin International, Inc. and Garmin LTD | Hearing: 12/11/2020, at 10:00 am. |
| Defendants, Counterclaimants | |

**TABLE OF CONTENTS**

I.   SUMMARY OF PERTINENT FACTS AND ARGUMENT……….…….4

II.  THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT HAVE CONSIDERABLE OVERLAP……………………………………………8

III. THE INSTITUTED '233 IPR FURTHER WARRANTS A STAY OF THIS MATTER WHILE PHILIPS' RULE 54 APPEAL IS BEING HEARD…………………………………………………………………....9

IV.  IF THIS HONORABLE COURT DOES NOT STAY THE ENTIRE MATTER, IT SHOULD DENY PHILIPS' RULE 54(B) MOTION…….13

V.   GARMIN MET ITS MEET AND CONFER OBLIGATION……………15

VI.  CONCLUSION……………………………………………………..16

# TABLE OF AUTHORITIES

*23andMe, Inc. v. Ancestry.com DNA, LLC*, No. 18-cv-02791-EMC, 2018 U.S. Dist. LEXIS 188327 (N.D. Cal. Nov. 2, 2018).......................................................................................... 16

*Curtis-Wright* case. *See, e.g., Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 4 100 S. Ct. 1460 (1980).................................................................................................................. 14

*Drone v. Sz Dji Tech. Co.*, No. CV 19-04382-AB (AFMx), 2020 U.S. Dist. LEXIS 138497 (C.D. Cal. Mar. 17, 2020). ............................................................................................................ 11

*Drone v. Sz Dji Tech. Co.*, No. CV 19-04382-AB (AFMx), 2020 U.S. Dist. LEXIS 138497 (C.D. Cal. Mar. 17, 2020) ............................................................................................................. 12

*Fitniv* case. *See Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11(PTAB Mar. 20, 2020) ....... 10

*Nazomi Communs., Inc. v. Nokia Corp.*, No. C-10-04686 RMW, 2012 U.S. Dist. LEXIS 181332, (N.D. Cal. Dec. 21, 2012) ....................................................................................................... 14

*Seiko Epson Corp. v. Optoma Tech.*, Inc., 323 F. App'x 896, 898 (Fed. Cir. 2008). ...................... 15

*State Contracting and Eng'g Corp. v. Florida*, 258 F.3d 1329, 1334 (Fed. Cir. 2001).................. 14

*Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 830 (Fed. Cir. 2003);................................ 14

*Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 4 100 S. Ct. 1460 (1980). ......................................... 14

I.     SUMMARY OF PERTINENT FACTS & ARGUMENT

Philips asserted six patents against Garmin. (Dkt. No. 45, ¶48.) Only three remain. The '007 Patent was invalidated at claim construction (Dkt. No. 102), Philips disclaimed the asserted claims of the '958 Patent before the USPTO after Garmin plead in its claim construction briefing that the '958 claims cannot be asserted against fitness products, and Philips has voluntarily withdrawn its infringement allegations as to the '192 Patent. (Lamkin Decl., ¶¶4-6.) Only the '233 Patent (expired), the '377 Patent (expired), and the '542 Patent remain at-issue. Further, the Patent Trial and Appeal Board recently instituted an IPR challenge against all of the asserted claims of the '233 Patent, finding a "reasonable likelihood that Petitioner would prevail" in its invalidity challenge. (Lamkin Decl., ¶7.) Thus, what was once a six-patent case has been cut down to just three patents – and of those three, two are expired, and one is being challenged at the PTAB. On this record, Philips seeks to rush the expired '007 to appeal.

There is no credible reason to sever out the '007 Patent for a separate appeal while moving forward with litigation on the three remaining Patents-in-Suit. Although neither the '007 Patent nor the three remaining patents are related to each other, Philips is accusing largely the same Garmin products, with the same functionalities, across the remaining Patents-in-Suit. (Lamkin Decl., Exhs. B-C.) As Philips admits, "some of those functions [accused under the non-'007 Patents] may also exist in the same Garmin products that contain the accused ['007 Patent]

GPS-based athletic performance feedback functionality." (Motion, Dkt. No. 110, at 2:4-6.) And, Philips readily acknowledges that it asserted six patents together in this single lawsuit for "judicial efficiency". (*Id.* at 10:13-14.) Yet, Philips now argues for piecemeal litigation and appeal of the '007 Patent, a patent that Garmin has invalidated here, in the United Kingdom, and just last week, Germany. (Lamkin Decl., ¶¶8-9.) This is the opposite of judicial efficiency and serves no purpose other than to seek to multiply the cost and expense of the proceedings and permit Philips multiple bites at the same Garmin products. There is no legal or practical reason to sever the expired '007 Patent for purposes of appeal while simultaneously proceeding with litigation on overlapping products with overlapping functionalities on the remaining asserted patents. All of the issues should first be resolved by this Court, from which a single appeal may be taken.

Conversely, if this Honorable Court finds Philips' claim for urgency credible, Garmin requests that this Court stay this matter pending said appeal of the '007. Otherwise, if Philips' request for a Rule 54(b) appeal is granted, the Parties will be litigating over the '233 Patent here and before the PTAB, the Parties will be engaged in an appeal over the invalidation of the '007 Patent before the CAFC, and the Parties will proceed here over the '233, '542, and the '377 Patents even though each of these patents cover the same accused products and overlapping accused functionality. That would be the epitome of judicial inefficiency.

All of this rendered messier by the fact that Philips chose to depose Garmin's

GPS expert <u>after</u> *Markman* proceedings, impliedly understanding that said deposition would undermine Philips' argument that GPS calculations involved simple "high school level math". (*See* Philips' Opening Claim Construction Brief, Dkt. No. 77, at 9:9-17.) Which is exactly what happened. One of the world's foremost authorities on GPS and the first engineer at Garmin hired more than three decades ago, Jay Dee Krull, testified in his deposition that the math involved in using GPS to calculate athletic performance was extremely complex, thereby refuting Philips' "simple math" expert testimony. (Lamkin Decl., ¶10, Exh. A.) But because Philips chose to depose Mr. Krull after this Court's Claim Construction Order, this Court did not have the opportunity to consider his testimony. Thus, if Philips is allowed to proceed under Rule 54(b) to appeal two outcomes are possible: (1) the CAFC could and should affirm this Court's correct finding that the specification of the '007 contained "insufficient disclosure supporting how to compute various types of 'athletic performance feedback data.'" (Claim Construction Order, at 9.) However, in the unlikely event that the CAFC reverses and remands, the '007 would proceed in a separate matter than the remaining Patents-in-Suit and in that separate matter, this Court will be able to consider his testimony and again, based on that testimony, invalidate the '007. Setting that patent up for a potential second appeal, all parallel to the litigation of the other originally asserted Patents-in-Suit. Inefficiencies upon inefficiencies.

      Notably, in the interest of judicial efficiency, Garmin offered to stay this case

while Philips appealed the invalidity ruling on the '007 Patent. (Lamkin Decl., ¶11.) Given that the remaining '223 and '337 Patents are expired, and the '233 Patent is undergoing IPR review at the PTAB, a stay of the proceedings would allow for a determination on, and potential narrowing of, key issues prior to further adjudication by this Court. Philips declined. (*Id*.) Nevertheless, to the extent that the Court is inclined to sever the '007 Patent, Garmin respectfully submits that a stay of the remainder of this case pending Philips' '007 appeal serves the interests of judicial efficiency and the mandates of Rule 1. *See* Fed.R.Civ.P 1 (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")

In Garmin's view, the best course is to stay this matter in its (remaining) entirety, grant Philips' request for a Rule 54(b) appeal, and lift the stay on this matter when the PTAB has adjudicated the '233 IPR and the CAFC rules on Philips' Rule 54(b) appeal, whether it remands or affirms. That is the most efficient path forward, the path warranted by common sense, caselaw, and Rule 1.

Finally, it's important to note that the entirety of Philips' Motion consists of attorney argument. Aside from citing the high-level descriptions of the patents in its own complaint, Philips makes no effort to demonstrate that the claims of the '007 are actually distinct from the claims of the remaining Patents-in-Suit. (*See* Motion, at 2-3.)

## II. THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT HAVE CONSIDERABLE OVERLAP

The asserted claims of the '007 are drawn toward providing athletic performance feedback data. (Claim Construction Order, at 9.) In its infringement contentions, Philips cites the Garmin Connect smart phone application ("Garmin App") as satisfying that limitation. (Lamkin Decl., ¶¶12-14, Exhs. B-C.) Philips cites the Garmin App as the accused functionality for display of exercise, health, or medical data for each of the remaining Patents-in-Suit. (*Id*.) Philips also accuses Garmin's Livetrack feature for presenting feedback data, a feature it accused in each of the other remaining Patents-in-Suit. The same for Garmin's Alerts feature. (*Id*.) Other accused features shared between the '007 and the remaining Patents-in-Suit include: distance, pace, heart rate, wireless, the watch GUI, and Garmin's website. (*Id*.) In short, there is considerable factual overlap between the '007 Patent and the remaining Patents-in-Suit.

Garmin disagrees with Philips' unsupported contention: "while the same Garmin products may be nominally implicated across multiple of Philips's various infringement claims, they are implicated for very different reasons concerning entirely different functionalities[.]". (Motion, at 2:6-8.) The above-cited evidence directly contradicts Philips' mere attorney argument. But even assuming *arguendo* that Philips' statement is accurate, it shouldn't matter. The Parties and the Court would still need to wade through evidence, expert reports, damages reports, etc. discussing

each accused capability. And because the accused products are largely the same for each of the remaining Patents-in-Suit, the same fact and expert witnesses would have to be deposed and testify in each separate district court case, to name but one outcome in separating patents into distinct matters where the technology is similar and the accused products nearly identical. There is no reason to engage in expensive time-consuming efforts in three separate matters: the current matter, the IPR, and a severed '007 matter.

Further, there is overlap in the invalidity arguments and evidence. For example, Garmin asserted four pieces of prior art against both the '233 and '007: Jacobson, Marathon Man, Dynastream, and Polar Watches. Jacobson and Marathon Man are particularly important. Jacobson is one of the key pieces of prior art asserted in the '233 IPR. And Marathon Man is very strong art asserted against the '007, the '233, and the '377. Further the Quy '191 Patent is cited as probable invalidating prior art in the '233 IPR and Quy '191 is the parent patent to the asserted '377 Patent. There is bound to be overlap in the interpretation and application of those patents across the IPR and this matter. Again, there is no reason to litigate this art across three separate matters; judicial efficiency compels the opposite result.

### III. THE INSTITUTED '233 IPR FURTHER WARRANTS A STAY OF THIS MATTER WHILE PHILIPS' RULE 54(B) APPEAL IS BEING HEARD

On October 27, 2020, the PTAB found the claims of the '233 Patent to be likely

invalid and instituted an IPR.[1] The PTAB proceeding must be completed within a year of institution by statute.

"In deciding whether to grant a stay pending IPR proceedings, courts in this District have considered three factors that were originally used to consider requests for stays pending IPR." *Drone v. Sz Dji Tech. Co.,* No. CV 19-04382-AB (AFMx), 2020 U.S. Dist. LEXIS 138497, at *3 (C.D. Cal. Mar. 17, 2020). "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Id*. (citations omitted). "While these three factors are important, ultimately, the totality of the circumstances governs." *Id*. (citations omitted).

Here, factor one would ordinarily favor Philips: discovery is nearly complete and the matter is set for trial on July 27, 2021.[2] But currently the Central District has suspended civil jury trials during the Covid-19 pandemic and with the current rise in Covid-19 cases, a trial in July of 2021 appears unlikely. More importantly, the PTAB will have to decide the '233 IPR by October 27, 2021, a mere three months to the day

---

[1] Fitbit also filed an IPR against the '377. The PTAB denied institution, not under the merits but the administrative, and controversial, *Fitniv* case. *See Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 5–6 (PTAB Mar. 20, 2020) (precedential). Regardless, the art cited by Fitbit does not include Garmin's strong prior art discussed herein.

[2] Discovery is nearly complete as the Parties are working together amicably to complete some discovery not completed before the close of fact discovery.

from the current trial date. Given the rate of invalidity at the PTAB for instituted IPRs (63%), a trial as to the '233 three months before final decision is a waste of judicial resources.[3] This factor slightly to moderately favors a stay.

Under factor two, Garmin believes it has demonstrated there to be substantial factual and legal overlap between the remaining patents (the '233, '377, and '542 Patents) and the invalidated '007 Patent. This factor weighs in favor of staying the entire case during the pendency of the '233 IPR and Philips' Rule 54(b) appeal of the '007 Patent.

Under factor three, there is no evidence that a stay would prejudice Philips or provide a clear tactical advantage to Garmin. Philips did not seek a preliminary injunction and thus has failed to argue harm from Garmin's continued sale of the Accused Products. The asserted '377 and '233 have expired (as has the '007). Garmin is not aware of any prejudice that can be rationally attributed to a stay. *See, e.g., Drone v. Sz Dji Tech. Co.*, No. CV 19-04382-AB (AFMx), 2020 U.S. Dist. LEXIS 138497, at *9 (C.D. Cal. Mar. 17, 2020) ("delay alone does not constitute prejudice"). This factor weighs in favor of a stay.

Under the totality of the circumstances, each of the claims of the remaining Patents-in-Suit have considerable factual and legal overlap. Philips believes it important that it be permitted to immediately appeal this Court's invalidation of the

---

[3] Lamkin Decl., ¶15, Exh. E.

'007 Patent. As such, the most efficient path forward is to stay this matter and allow Philips' appeal of the '007 to proceed. By the time Philips' appeal is resolved, the IPR will also be resolved and the Parties and this Court can move forward with any surviving Philips patents.

Also, under the totality of the circumstances, Philips chose to depose Garmin's GPS expert after the issuance of this Court's Markman Order. As noted, Jay Dee Krull is a renowned authority on GPS and the inventor of some of the original GPS technology employed in Garmin's fitness products. Philips spent the great bulk of Mr. Krull's deposition asking him whether "simple high school math" could provide the requisite algorithm for the '007 Patent's means-plus-function claims invalidated by this Court. Mr. Krull was adamant that Philips simple math argument was factually incorrect. (Lamkin Decl., Exh. A.) Garmin did not present expert testimony on this issue during the Markman because the law is clear that expert knowledge cannot supply the missing algorithm. (*See* Garmin Responsive Claim Construction Brief, Dkt. No. 79, at 4:20-5:3.) But Philips took the opposite position during *Markman* briefing and will assuredly take the same position before the CAFC. (*See* Motion, at 4:25-28.) Thus, in the unlikely event of remand, Mr. Krull's testimony will be placed before this Court. As such, judicially efficiency would be served in having the matter stayed while the CAFC decides the fate of the '007. If the CAFC remands, this Court may adjudicate the effect of Mr. Krull's testimony concurrent with adjudication of the other Patents-in-Suit.

Finally, under the totality of the circumstances, Garmin has invalidated the claims of the European counterpart of the '007 in the United Kingdom and the claims of the German '007 Patent in Germany. Consistent with Philips' new patent monetizer business model, Philips keeps attempting to force Garmin to pay unwarranted royalties on a patent repeatedly found to be invalid over Garmin's own prior art products. At some point Philips needs to stop trying to extract rents using a patent repeatedly found to be invalid. Either the '007 should be appealed now while the remainder of the case is stayed, or Philips Motion should be denied, and the remaining Patents-in-Suit kept together for one final resolution.

### IV.   IF THIS COURT DOES NOT STAY THE ENTIRE MATTER, IT SHOULD DENY PHILIPS' RULE 54(B) MOTION

*Curtiss-Wright* sets forth the high-level two-part test for a Rule 54(b) certification. *See Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 4 100 S. Ct. 1460 (1980). Further, in patent cases, "Federal Circuit law applies to Rule 54(b) certification issues". *Nazomi Communs., Inc. v. Nokia Corp.*, No. C-10-04686 RMW, 2012 U.S. Dist. LEXIS 181332, at *8 (N.D. Cal. Dec. 21, 2012) (*citing Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 830 (Fed. Cir. 2003); *State Contracting and Eng'g Corp. v. Florida*, 258 F.3d 1329, 1334 (Fed. Cir. 2001).

Garmin agrees that this Court's Claim Construction Order is a final judgment that can be certified for Rule 54(b) appeal. But the Parties diverge at step two of the

*Curtis-Wright* formulation. *i.e.*, that there was "no just reason for delay".[4] Fed.R.Civ.P 54(b); *Seiko Epson Corp. v. Optoma Tech.*, Inc., 323 F. App'x 896, 898 (Fed. Cir. 2008).[5]

As noted above, the only justification Philips gives at step two is an alleged "cloud" over its ability to assert the '007 Patent, but Philips is pushing forward with its infringement claims on the '007 Patent against Fitbit in co-pending litigation in the District of Massachusetts, despite this Court's invalidation of the asserted claims of the '007 Patent. While Philips laments that "a cloud [has been] placed over its ability to enforce the '007 Patent," Philips' continued assertions of the '007 in Massachusetts betrays their alleged concern. There is simply no justification for subjecting Garmin to repeated, duplicative proceedings merely so Philips can continue to press an invalidated patent. (*See* Motion, at 11:9-11, 24-25.) And it is certainly not "sound reason to justify departure from the general rule that all issues decided by the district

---

[4] It is unclear why Philips spent much of its Motion explaining the difference between Rule 54(b) and Section 1292. Even its statement that "certification" should not apply to Rule 54(b) appears inconsistent with the law; SCOTUS uses the term "certification" dozens of times in the seminal *Curtis-Wright* case. *See, e.g., Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 4 100 S. Ct. 1460 (1980) ("Curtiss-Wright then moved for a certification of the District Court's orders as final judgments under Federal Rule of Civil Procedure 54 (b).") Regardless, Garmin follows the caselaw governing the application of Rule 54(b) not Section 1292 herein.
[5] Garmin disagrees with Philips that there are no time limits to bringing a Rule 54(b) Motion. *See, e.g., Noland v. Va. Ins. Reciprocal*, 224 W. Va. 372, 377 (W. Va. September 24, 2009). But Garmin does not take issue with the timeliness of Philips' Motion herein.

court should be resolved in a single appeal of a final judgment." *See iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008).

Further, the only case cited by Philips at step two, *23andMe*, actually counsels against Philips' Motion. The claims in that case were the invalidated patent claims and "factually and legally distinct [] false/misleading advertising claims and the declaratory judgment trademark claims." *23andMe, Inc. v. Ancestry.com DNA, LLC*, No. 18-cv-02791-EMC, 2018 U.S. Dist. LEXIS 188327, at *6 (N.D. Cal. Nov. 2, 2018). This case is materially different as all of the claims are patent claims, covering the same accused products with substantial factual and legal overlap.[6]

Philips itself admitted that it brought the Patents-in-Suit together in this action "to increase judicial efficiency". (Motion, at 10:13-14.) Garmin agrees; the Patents-in-Suit belong in the same matter. Thus, either this matter should be stayed while Philips pursues its Rule 54(b) appeal or Philips' Motion should be denied.

V. **GARMIN MET ITS MEET AND CONFER OBLIGATION**

Philips represents that the only basis provided by Garmin in opposing Philips' Motion during the Parties' meet and confer was that the '007 Patent had expired. (Motion, at 12:2-5.) That representation is not accurate. During the Parties' telephonic meet and confer, the undersigned stated that her client would likely oppose

---

[6] The only asserted patent that covered distinct products was the '192, which has been dropped by Philips.

given the substantial factual overlap between the Patents. (Lamkin Decl., ¶11.) The undersigned followed up with an email stating that she did not believe the Rule 54(b) standard could be met "especially for an expired patent". (*Id*.) Philips apparently concluded from that email that Garmin had abandoned its position that the Patents-in-Suit contained substantial overlap. The undersigned has since discussed Philips' representations to this Court and is satisfied that Philips was operating under a good faith misunderstanding. (*Id*.) The undersigned also discussed with Philips staying the remainder of the case pending a Rule 54(b) appeal but Philips said it would oppose that suggestion. (*Id*.)

## VI.    CONCLUSION

Philips is running around the world asserting and losing patents in a scattershot effort to monetize weak, expired patents. Philips' attempt to multiple proceedings is plainly a waste of the Courts' and Parties' resources. Possibly by design, possibly in an attempt to extract monies through sheer financial and resource exhaustion. But that's not how this is supposed to be done; it's certainly not what is contemplated by the Federal Rules' prohibition against piecemeal litigation.

Philips' Amended Complaint asserted six patents against Garmin. Since then, one patent has been invalidated ('007), Philips canceled the claims of one patent ('958), Philips dropped one patent ('192) and an IPR has been instituted over another (the '233). Garmin has invalidated the '007 in three separate countries based on Garmin's own prior art products. The '233, '542, and '377 remain before this Court.

In light of Philips' request for Rule 54(b) certification and in light of the institution of an IPR over the claims of the '233, Garmin believes the remaining three patents should be stayed pending the outcome of Philips' appeal and the IPR. Then any patents remaining among the original six can proceed in a single action. In the alternative, Garmin asks that Philips' Motion be denied with this matter proceeding to the merits. At the end of this litigation, Philips (or Garmin) can appeal its losses in the entire matter in one instance.

November 20, 2020    Respectfully submitted

*Rachael D. Lamkin*
Rachael D. Lamkin
*Attorney for Defendants,*
*Counterclaimants*

### CERTIFICATE OF SERVICE

On this date, November 20, 2020, Defendants served the following document upon Plaintiff via electronic mail.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 54(B MOTION**

*Rachael D. Lamkin*
Rachael D. Lamkin