JEAN-PAUL CIARDULLO, CA Bar No. 284170
  jciardullo@foley.com
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

ELEY O. THOMPSON (*pro hac vice*)
  ethompson@foley.com
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312-832-4359
Facsimile: 312-83204700

RUBEN J. RODRIGUES (*pro hac vice*)
  rrodrigues@foley.com
LUCAS I. SILVA (*pro hac vice*)
  lsilva@foley.com
JOHN W. CUSTER (*pro hac vice*)
  jcuster@foley.com
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: (617) 342-4000
Facsimile: (617) 342-4001

*Attorneys for Plaintiff*
*Philips North America LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Philips North America LLC,<br><br>   *Plaintiff*,<br><br>vs.<br><br>Garmin International, Inc. Garmin USA, Inc. and Garmin Ltd.,<br><br>   *Defendants*. | Case No. 2:19-cv-06301-AB-KS<br><br>**PHILIPS NORTH AMERICA LLC's REPLY IN SUPPORT OF ITS MOTION UNDER RULE 54(b) TO ENTER FINAL JUDGMENT AS TO COUNT I FOR INFRINGEMENT OF U.S. PATENT NO. 6,013,007**<br><br>Date: December 18, 2020<br>Time: 10:00AM<br>Crtrm: 7B (350 West First Street)<br><br>[UPDATED VERSION] |

# TABLE OF CONTENTS

I. GARMIN INTERJECTS IRRELEVANT NEW ARGUMENTS ............................ 1

    A. The '233 Patent IPR ........................................................................... 1
    B. The European Proceedings ................................................................ 1

II. GARMIN FAILS TO PRESENT ANY LEGALLY COGNIZABLE ARGUMENT FOR WHY THE APPEAL OF THE '007 PATENT SHOULD BE DELAYED ................................................................................ 2

    A. Philips's Motion Is Not "Attorney Argument" ................................. 2
    B. That Certain Garmin Products Are Accused Of Infringing Different Patents For Different Reasons Does Not Affect The Rule 54(b) Analysis ............................................................................................. 2
    C. No "Judicial Efficiency" Is Realized By Delaying Appeal ............. 5
    D. There Is No Risk Of Piecemeal Appeals, Which Is What Matters .. 7
    E. There Is No Just Reason For Delay ................................................ 10

        1. Philips Is Prejudiced By Needless Delay ............................. 10
        2. Garmin Is Not Prejudiced By An Immediate Appeal .......... 10

    F. The Court Would Set An Unfortunate Precedent If Rule 54(b) Judgment Were Not Entered In As Straightforward A Case As This ........... 11

III. A STAY PENDING THE '233 PATENT IPR IS NOT APPROPRIATE ............. 11

    A. The Case Is Already Far Along ....................................................... 11
    B. There Is No Basis To Stay As To The '377 And '542 Patents, Which Also Weighs In Favor Of No Stay At All ...................................... 12

        1. The '377 And '542 Patents Do Not Overlap With The '233 Patent .................................................................................... 12
        2. The Case Should Proceed On All Three Patents ................. 13
        3. Even If The Case Were Stayed As To The '233 Patent, It Should Continue On The '377 And '542 Patents ............................ 14

IV. CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cox Communs., Inc. v. Sprint Communs. Co. L.P.*,
   No. 12-487-SLR, 2015 U.S. Dist. LEXIS 113522 (D. Del. Aug. 27, 2015) .................. 9

*Curtiss-Wright Corp. v. General Elec. Co.*,
   446 U.S. 1 (1980) ..................................................................................................... 7, 9

*Dane Technologies, Inc. v. Gatekeeper Systems, Inc.*,
   2013 U.S. Dist. LEXIS 117718, 2013 WL 4483355 at *1-3 (D. Minn.
   2013) ........................................................................................................................... 13

*Davol, Inc. v. Atrium Medical Corp.*,
   2013 U.S. Dist. LEXIS 84533, 2013 WL 3013343 at *2-6 (D. Del. 2013) ................. 13

*Drone v. Sz Dji Tech. Co.*,
   No. CV 19-04382-AB, 2020 U.S. Dist. LEXIS 138497 (C.D. Cal. Mar.
   17, 2020) ..................................................................................................................... 11

*Hewlett-Packard Co. v. ServiceNow, Inc.*,
   No. 14-cv-00570-BLF, 2015 U.S. Dist. LEXIS 139383 (N.D. Cal. Oct.
   13, 2015) ..................................................................................................................... 14

*ImageCube LLC v. Boeing Co.*,
   No. 04-cv-7587, 2010 U.S. Dist. LEXIS 5252 (N.D. Ill. Jan. 22, 2010) ................... 6, 7

*Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*,
   730 F.2d 1452 (Fed. Cir. 1984) ..................................................................................... 2

*Medtronic, Inc. v. Daig Corp.*,
   789 F.2d 903 (Fed. Cir. 1986) ....................................................................................... 2

*Parity Networks, LLC v. Juniper Networks, Inc.*,
   No. 18-cv-06452-JSW, 2019 U.S. Dist. LEXIS 231122 (N.D. Cal. July 3,
   2019) ........................................................................................................................... 14

*Pentair Water Pool and Spa, Inc. v. Hayward Indus., Inc.*,
   2012 U.S. Dist. LEXIS 178630, 2012 WL 6608619 at *3 (E.D.N.C.
   December 18, 2012) .................................................................................................... 14

*RR Donnelley & Sons Co. v. Xerox Corp.*,
  No. 12-cv-6198, 2013 U.S. Dist. LEXIS 176620 (N.D. Ill. Dec. 16, 2013) ................ 13

*SCVNGR, Inc. v. eCharge Licensing, LLC*,
  No. 13-12418-DJC, 2014 U.S. Dist. LEXIS 135408 (D. Mass. Sep. 25,
  2014) ................................................................................................................... 13

*SZ DJI Tech. Co. v. Yuneec Int'l Co.*,
  No. CV 16-0595-BRO, 2016 U.S. Dist. LEXIS 187770 (C.D. Cal. Dec.
  5, 2016) ................................................................................................................ 13

*W.L. Gore & Associates v. International Medical Prosthetics Research
  Associates, Inc.*,
  975 F.2d 858 (Fed. Cir. 1992) ................................................................................ 7

*Waddington N. Am., Inc. v. Sabert Corp.*,
  No. 09-4883 (GEB), 2011 WL 3444150 (D.N.J. Aug. 5, 2011) ................................ 2

**Rules**

Fed. R. Civ. P. 54(b) ........................................................... 1, 3, 5, 6, 7, 9, 10, 11, 15

Plaintiff Philips North America LLC ("Philips") hereby replies to Garmin International, Inc. and Garmin Ltd.'s (collectively "Garmin") Opposition (Dkt. 113) to Philips's Motion under Fed. R. Civ. P. 54(b) (Dkt. 110, "Motion") for the Court to enter final judgment on Count I of Philips's Amended Complaint concerning U.S. Patent No. 6,013,007 ("'007 Patent").

## I. GARMIN INTERJECTS IRRELEVANT NEW ARGUMENTS

### A. The '233 Patent IPR

The institution of the IPR on the '233 Patent plays a prominent role in Garmin's Opposition, though notably was not discussed by the parties with respect to the Rule 54(b) Motion for the simple reason that the IPR was not instituted until two weeks after the parties had met and conferred on the present Motion. Nevertheless, Philips has no procedural objection to Garmin's arguments concerning the '233 Patent IPR presented in the Opposition. Philips does believe, however, that it bears clarification that Garmin never sought an IPR on any of the other patents still in dispute, *i.e.*, the '007, '377, and '542 Patents. (*See* attached Ciardullo Declaration, ¶ 2.) Garmin joined with Fitbit on the IPR petition for the '233 Patent, but tellingly declined to join when Fitbit also pursued an IPR on the '377 Patent, which the Patent Office subsequently declined to institute. (*Id.*) If Garmin believed it had some other compelling basis to invalidate the '377 Patent beyond what Fitbit argued, Garmin could have pursued its own IPR, but chose not to. The validity of the patent now having been confirmed by the Patent Office, there is no basis to delay trial.

In any event, as discussed *infra*, Garmin has not demonstrated that the '233 Patent IPR has any bearing on how the Motion should be decided, nor has Garmin shown that it warrants a stay of any proceedings.

### B. The European Proceedings

Garmin argues that "Garmin has invalidated the claims of the European counterpart of the '007 in the United Kingdom and the claims of the German '007 Patent in Germany." (Opp., p. 13.) As an initial matter, this is not entirely accurate: the claims of the European counterparts were in fact upheld as valid in amended form, and the UK and German courts disagreed in their reasoning. But more importantly, happenings in Europe should not be of any import to the

present case or the present Motion. *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907-08 (Fed. Cir. 1986) (characterizing as "specious" the defendant's argument that the Court should "adopt the conclusion of a German tribunal holding the … German counterpart patent obvious" and noting that "[t]he patent laws of the United States are the laws governing a determination of obviousness/nonobviousness of a United States patent in a federal court."); *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1458 n.2 (Fed. Cir. 1984) (finding it "meaningless" as to the issue of invalidity in the United States the fact that foreign counsel in a foreign counterpart allegedly conceded that prior art anticipated the foreign counterpart's claims). As one judge colorfully put it, "**a [f]oreign proceeding is not going to invalidate a U.S. patent, end of story**." *Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883 (GEB), 2011 WL 3444150 at *7 (D.N.J. Aug. 5, 2011) (emphasis added).

II. **GARMIN FAILS TO PRESENT ANY LEGALLY COGNIZABLE ARGUMENT FOR WHY THE APPEAL OF THE '007 PATENT SHOULD BE DELAYED**

A. **Philips's Motion Is Not "Attorney Argument"**

As an initial matter, Philips's Motion does not consist of "attorney argument." (Opp., p. 7.) Rather, Philips's Motion walks through the patents themselves (Motion, pp. 1-3), which on their face are drawn to distinctly different technical subject matter, and constitute the best and most objective evidence that the '007 Patent claims are severable. Furthermore, as Garmin notes (Lamkin Dec. ¶ 11), Philips had understood based on Garmin's written follow-up to the meet and confer that Garmin would not be disputing that the '007 Patent claims were severable, but rather was only taking the position that there was no need to presently appeal invalidation of an expired patent. Thus, Philips did not understand there to be any need to spell out the severability of the issues in more exhaustive detail. In any event, the Motion already demonstrates that the claims are severable, and that there is no just reason for delay. The arguments below respond to those specifically raised in the Opposition.

B. **That Certain Garmin Products Are Accused Of Infringing Different Patents For Different Reasons Does Not Affect The Rule 54(b) Analysis**

As is evident from the face of the asserted patents themselves, the '007 Patent is directed

to a GPS performance feedback functionality that is simply not at issue in any of the other patents, which concern entirely different kinds of functionalities. As correctly argued in the Motion, the '007 Patent could have been asserted in a parallel lawsuit in a different district and there would have been no risk of inconsistent judgments with the litigation of the balance of the patents in this Court, which is a compelling litmus test for the application of Rule 54(b). Garmin ultimately does nothing in its Opposition to refute this, despite it being conspicuously raised in the Motion.

As shown in the Motion with reference to the patents themselves (Motion, p. 1-3), the patents claim non-overlapping technologies, and are asserted against non-overlapping functionalities of Garmin products:

**(a)** The '007 Patent covers detailed improvements for using GPS waypoints to provide a user with reports about, e.g., pace. The Garmin functionalities accused of infringement are those that provide such GPS-waypoint based feedback information.

**(b)** The '233 Patent is directed to an improved system for governing securely transmitted information (including physiological parameters) between devices. The Garmin functionalities accused of infringement relate generally to how the password/login aspects of the Garmin Connect App govern secure transmission of information from a device.

**(c)** The '377 Patent is more narrowly directed to improvements relating to a download application on an internet-enabled wireless phone used to gather exercise related information, sending that information to a server, determining a calculated response based on said exercise information at the server, and displaying that response on the phone. The Garmin functionalities accused of infringement include the Garmin Insights and Garmin Coach programs to the extent that they utilize calculations made at the server based on exercise-related data from a user's wireless phone.

**(d)** The '542 Patent is directed to a method for generating warning

indications to a user based on undesirable physical conditions based on analyzing one or more vital parameters. The Garmin functionalities accused of infringement include the Garmin Training Status feature which provides warnings about undesirable physical conditions.

These patents were invented by entirely different people, and the technology they claim is unrelated apart from the fact that they broadly concern electronic monitoring of the activities of a person.

Nowhere in its Opposition does Garmin truly dispute the foregoing conclusions, because Garmin cannot dispute them: they are based on simple objective facts. Rather, Garmin merely emphasizes that there is an overlap in the *products* that contain the differing functionalities claimed by the patents. Garmin's purported evidence against severability consists of an unremarkable listing of products from Philips's Infringement Contentions (Dkt. 113-3) that demonstrates the fact – undisputed by Philips – that a number of the same Garmin products are host to more than one of the accused infringing functionalities. However, this has no more significance than if Philips had one patent directed to a car radio, and anther patent directed to a car climate control system, and asserted both patents against the same car. The happenstance of the same product containing two different and unrelated accused functionalities does not mean that the asserted patents themselves overlap.[1]

Philips's detailed claim charts only confirm this. For example, claim charts for the Garmin Fenix 5 product are attached hereto as Exhibits 1-4, and clearly demonstrate that the functionalities accused within that product are distinctly different for each asserted patent.[2] Philips is breaking down infringement of the patents along lines of accused

---

[1] Philips never "admitted" otherwise in its Motion. Garmin quotes Philips as saying "some of those functions [accused under the non-'007 Patents] may also exist in the same Garmin products that contain the accused ['007 Patent] GPS-based athletic performance feedback functionality." (Opp., p. 4-5.) While framed as an "admission," this is simply an accurate and unremarkable statement of Philips's position, *i.e.*, that even if the products containing the accused functionalities map overlap, the patents themselves do not.

[2] Claim 24 of the '233 Patent nominally references a GPS feature but this is of no import for two reasons: (1) the claimed element is not a GPS waypoint-based feedback mechanism

*functionalities* of products – not the products themselves. The '007 Patent claim charts are directed the GPS waypoints performance metrics. The other claim charts are not. The accused functionalities do not overlap, and the causes of action are obviously severable.

### C. No "Judicial Efficiency" Is Realized By Delaying Appeal

Contrary to Garmin's assertions, there is no "judicial efficiency" gained from postponing the appeal of the '007 Patent indefiniteness finding until after trial of the rest of the unrelated patents. Regardless of whether Philips appeals the '007 Patent now or after trial, if the Federal Circuit were to reverse and remand on the narrow question of the Court's August 28, 2020 indefiniteness ruling, then in both scenarios there would necessarily be a second follow-on district court proceeding regarding the '007 Patent. If that proceeding requires calling some of the same knowledgeable witnesses and recitation of some of the same general background facts (*e.g.*, how many units of products containing the accused functionalities were sold), then that will be the same no matter whether that remanded case happens sooner, or if it happens later. Such "duplication" is an inherent possibility any time a claim is severed on a Rule 54(b) Motion that could result in a follow-on remanded proceeding, and has no bearing on the analysis.

Garmin also makes much of the deposition testimony of Mr. Krull, which is irrelevant to the Rule 54(b) analysis.[3] Garmin argues in essence "but if there is a remand, we might have other arguments to make about why the '007 Patent should be found invalid." But of course

---

of the kind claimed in the '007 Patent, and more importantly/simply (2) Philips will not be moving forward with this claim in the case (a decision that had already been reached in view of the claim construction order).

[3] Contrary to Garmin's unsupported insinuations, Philips did not somehow plot to delay the deposition of Mr. Krull until after the Claim Construction Order as a plan to avoid his testimony. Rather, Philips did not depose any witnesses prior to the Claim Construction Order. (Ciardullo Dec., ¶ 4.) The timing of the depositions had only to do with the timing of events in discovery, and the fact that it is customary that depositions happen last. Garmin's arguments about Mr. Krull also beg the question: if Garmin viewed his testimony as so critical to claim construction, then why did Garmin not submit a declaration from Mr. Krull as part of its claim construction briefing to the Court? Garmin has waived claim construction arguments based on Mr. Krull's testimony by failing to argue those positions during the actual claim construction process.

that would be same regardless of whether Philips's appeal happens now, or happens after trial. There is nothing that is going to be presented in the remainder of this case in the District Court that is going to have any bearing on how the Federal Circuit handles the appeal of the '007 Patent, which concerns only the narrow question of whether the Court's August 28, 2020 claim construction ruling of indefiniteness should be upheld, and which will handled in identical fashion regardless of whether that appeal is taken now or taken later.  To the extent Garmin is somehow suggesting that it will otherwise be arguing about Mr. Krull's testimony in the present case going forward, that is obviously incorrect.  Litigation on the '007 Patent in this case is over.  Even if Garmin's arguments concerning Mr. Krull were not waived for failure to make them during claim construction, this Court will never consider those arguments unless and until there is a remand, in which case that remand will play out the same way regardless of when it happens.

The same is also true of the purported "overlapping prior art" that Garmin cites.  (Opp., p. 9.)  As an initial matter, Philips notes that Garmin has asserted the Marathon Man reference against the '377 Patent and the '007 but not the '233 or '542 Patents.  Secondly, there is no relevant overlap in the prior art, and Garmin's Opposition fails to actually present any evidence to the contrary apart from attorney argument.[4]  But even if there were some nominal overlap, the handling of that prior art following a possible remand is going be identical regardless of whether a that remand happens sooner, or happens later.  No efficiency is gained by delay – only delay is gained by delay.

The foregoing was explained well in *ImageCube LLC v. Boeing Co.*, No. 04-cv-7587, 2010 U.S. Dist. LEXIS 5252 (N.D. Ill. Jan. 22, 2010).  In that case, an ImageCube patent was found to not be infringed, and ImageCube sought entry of judgment on that patent under Rule 54(b) so that an appeal could be taken.  The Defendants protested that they still had other invalidity defenses and other counterclaims that might provide additional bases to dismiss the

---

[4] The Jacobson reference, for example, relates to a wireless communication system – not a GPS waypoint-based performance feedback tool.  That Garmin unilaterally tries to shoehorn this reference against the '007 Patent does not make it relevant.  Nor does it ultimately matter for purposes of the present Rule 54(b) analysis, as discussed herein.

patent claims beyond those already ruled upon by the court. The court correctly rejected such arguments:

> Once the Court ruled in Defendants' favor as to one of the defenses to ImageCube's infringement claim, the Court had no reason to determine whether the additional defenses also should be sustained, because its judgment in favor of Defendants and against ImageCube as to that claim was 'final'… Aeromet also points to its unadjudicated counterclaims, which, if successful, could lead to the invalidation of ImageCube's patent []. Yet, the presence of nonfrivolous counterclaims 'does not render a Rule 54(b) certification improper.' *Curtiss-Wright*, 446 U.S. at 9; *see also W.L. Gore*, 975 F.2d at 864. [] Here, the Court is persuaded that Defendants' counterclaims…are separable from the matters as to which immediate appeal is sought. As Plaintiff points out, the counterclaims focus largely on prior art and the conduct of the inventor and his lawyers.

*Id.* at *8-10, relying on *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 9 (1980) and *W.L. Gore & Associates v. International Medical Prosthetics Research Associates, Inc.*, 975 F.2d 858, 863 (Fed. Cir. 1992).

### D. There Is No Risk Of Piecemeal Appeals, Which Is What Matters

The reason that Philips took care in its Motion to distinguish a Rule 54(b) judgment from a Section 1292 interlocutory appeal (Motion, p. 6-9) was to demonstrate why allowing an immediate appeal of the present case should be routine and does not implicate the kinds of concerns raised by Garmin. The driving objective at issue here is to avoid unnecessary piecemeal appeals. So, as Philips noted in its Motion, if the Court's claim construction order had merely construed the '007 Patent claims in an unfavorable way to Philips without invalidating them, the absence of a final judgment would have left Section 1292 as the only pathway to an immediate appeal, and Garmin's concerns about unnecessary duplication of work would have been a legitimate objection to a Section 1292 certification. That is because the case

could otherwise have continued in the district court and the '007 Patent might have been invalidated or found non-infringed on other grounds, possibly rendering the claim construction ruling only one of several adverse rulings that would need to be addressed at the appellate level, and making it a true matter of judicial efficiency to wait to join all those rulings in a single final judgment for a single appeal to address all of them together at once (if any appeal were to ultimately happen at all).

Here, litigation of the '007 Patent is over, so there are no forthcoming rulings on that patent that would have any bearing on appellate review. The proposed appeal would be limited to the very narrow question of whether the Court's claim construction ruling finding the '007 Patent indefinite should be upheld or not. The resolution of that narrow question has no bearing on the rest of the case that would continue in parallel. There is no similar indefiniteness argument at issue with any of the other patents. Indeed, the question of indefiniteness by its very nature is highly patent-specific, since it asks whether the language used in a particular patent claim is sufficiently clear and supported within the confines of that patent.

What might have otherwise mattered here is if a possible future determination of invalidity or non-infringement of one of the remaining patents would have necessarily meant that the '007 Patent must also be invalid or not infringed for the same reasons. For example, if another of the asserted patents was a child or parent patent of the '007 Patent with the same specification and similar claims directed to a GPS waypoint-based feedback system, and that child or parent patent were found invalid over prior art at trial, there might have been some potential efficiency realized in waiting for that outcome in the District Court before bringing an appeal on the '007 Patent since the issues presented might have been overlapping. However, there is no such scenario presented in this case. Even if all the other patents were found invalid and not infringed, that would have no bearing on the analysis of whether the '007 Patent is valid or infringed because the '007 Patent is unrelated to the rest of the patents and is drawn to different technology.

Certainly Garmin has shown no such "intertwined fates" among the asserted patents. Garmin tacitly admits as much in its Opposition, making only a half-hearted argument against

the obvious conclusion that the patents are distinct from each other, and then saying "even assuming arguendo that Philips' statement [that the patents are directed to different technology] is accurate, it shouldn't matter," as a lead in to Garmin's "judicial efficiency" arguments that Philips has now shown above are irrelevant. (Opp., p. 8-9.) The questions of the '007 Patent's validity and infringement stand alone from the rest of the patents, and will not be informed by resolution of validity and infringement of the remainder of the patents in the ongoing litigation in the District Court.

As explained by the Supreme Court in *Curtiss-Wright,* the primary considerations of the district court should be "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." 446 U.S. at 8 (and also noting at n.2 that neither factor was even necessarily dispositive). In the present case, both factors weigh in favor of granting the Rule 54(b) Motion. There is no inter-relationship between the issues raised by the indefiniteness ruling on the '007 Patent and the remaining issues in the case, and the '007 Patent claims are otherwise clearly severable from the rest. Furthermore, now that the '007 Patent has been invalidated, the appeal of that patent is going to look identical whether taken now or taken later. This is consistent with the reasoning of the respected patent scholar Judge Sue L. Robinson in her decision in *Cox Communs., Inc. v. Sprint Communs. Co. L.P.*, No. 12-487-SLR, 2015 U.S. Dist. LEXIS 113522, at *5 (D. Del. Aug. 27, 2015):

> With respect to the 'Invalidated Patents,' I have concluded that entry of a Rule 54(b) judgment is an appropriate procedural tool to accomplish what the Federal Circuit and Congress have encouraged (if not yet mandated) on the trial level, that is, to reduce the costs and inefficiencies of patent litigation through early dispositive rulings. Having determined, through a discrete motion practice on an issue of law, that these patents are invalid by reason of indefiniteness [], it makes imminent sense to have the Federal Circuit review my decision

sooner rather than later. I believe this conclusion is consistent with the principles underlying Rule 54(b).

Garmin notably fails to even acknowledge (much less distinguish) the multiple cases cited in Philips's moving papers in which a Rule 54(b) judgment was allowed based on a severable patent claim. (*See* Motion, p. 9-10.) Garmin's Opposition is also conspicuously bereft of any meaningful supporting case law of its own. That is because – as demonstrated by the Motion and above – the case law supports Philips's position. Entering a Rule 54(b) judgment on the present facts should uncontroversial and "routine." (*Id.*)

### E. There Is No Just Reason For Delay

#### 1. Philips Is Prejudiced By Needless Delay

Garmin argues that Philips is not prejudiced because it is continuing to assert the '007 Patent in parallel litigation against Fitbit in Massachusetts. (Opp., p. 14.) However, Philips's ability to prosecute that action is obviously impaired by the cloud created by August 28, 2020 Claim Construction Order. Even if the appeal were not decided for more than a year, the very fact that the appeal was currently pending would provide Philips with a stronger litigating position, and/or greater odds of achieving a nearer-term settlement that might avoid further litigation and result in judicial efficiency in a sister court.

Ultimately, it is not necessary for Philips to demonstrate prejudice, but rather simply that there is "no just reason for delay." Even if all things were equal, in the absence of any reason to affirmatively delay entry of judgment, Rule 54(b) directs that it be entered immediately.

#### 2. Garmin Is Not Prejudiced By An Immediate Appeal

As demonstrated above, Garmin's arguments about duplicative work are irrelevant: the appeal of the '007 Patent and any possible remand proceedings will be identical regardless of when they happen. Garmin makes it seem as though the appeal itself will create some kind of undue burden, but the reality is that this appeal will be narrow and simple: it concerns only the question of whether the August 28, 2020 claim construction ruling on indefiniteness should be upheld. The mere fact of Garmin having to draft a straightforward opposition brief on appeal of such a narrow topic does not constitute any kind of cognizable prejudice.

### F. The Court Would Set An Unfortunate Precedent If Rule 54(b) Judgment Were Not Entered In As Straightforward A Case As This

Philips has demonstrated that this case presents a "routine" scenario for entry of judgment under Rule 54(b). A single patent unrelated to the others patents in the case was cleanly carved out of the litigation by a decision on a very narrow question of law (indefiniteness) that is not otherwise implicated in the remainder of the case. If a Rule 54(b) judgment were not granted in this case, then Philips questions that there could be any scenario where it could be granted.

## III. A STAY PENDING THE '233 PATENT IPR IS NOT APPROPRIATE

Philips agrees with Garmin that, generally speaking, the relevant analysis for granting a stay pending an IPR is correctly stated in *Drone v. Sz Dji Tech. Co.*, No. CV 19-04382-AB (AFMx), 2020 U.S. Dist. LEXIS 138497, at *3 (C.D. Cal. Mar. 17, 2020): "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." However, Philips disagrees that Garmin can sustain its burden of proving entitlement to a stay under these factors.

### A. The Case Is Already Far Along

As Garmin concedes, proximity to trial is a major reason to deny a stay. Indeed, whatever efficiencies a stay might be intended to have in conserving resources is largely lost by shutting a case that is within sight of the finish line. The parties have been litigating this case since July 2019, and even then, it followed on prior legal battles between the parties. Fact discovery was completed in October, and expert discovery will close in February 2021. (Dkt. 108.) Dispositive motions are due on February 25, 2021 and are set to be heard on April 16, 2021. (*Id.*) Trial is set for July 27, 2021. Under such circumstances, a stay is improper.

Notably, the trial of this case was originally scheduled for March 20, 2021. When the parties jointly requested a modification of the case schedule in September, they intended that it only be a "modest" one, though did not propose a new trial date. (Dkt. 103.) The Court then of its own initiative set July 27, 2021 as the new trial date. (Dkt. 108.) Presumably, the Court scheduled that date intending that it mean something, rather than be an abstraction. Indeed, if

the schedule of this case were really such a nose of wax, it would be manifestly unfair for it have worked thus far to constrain the time Philips has had to conduct discovery (which Philips has diligently pursued in earnest reliance on the case schedule), only to have the schedule conveniently be of no consequence when Garmin suddenly wants to request a stay.

If it is actually true that the COVID pandemic will inevitably push back trial to a point in time after the '233 Patent IPR is already decided, then what Garmin's request for a stay really boils down to is a request to stop expert discovery and postpone summary judgment motions. However, in view of how far along the parties are, it makes the most sense to continue with the case schedule as planned so that the parties can finish expert discovery and present any summary judgment motions. Then, even if trial were delayed, the parties would be on track to receive the Court's rulings on summary judgment motions, which would aid in their ability to assess the case and plan for trial. The Court might even then set a schedule to resolve any motions *in limine* and other pre-trial matters that are independent of the subject matter of the '233 Patent IPR. There are many things the parties and Court can do to make the case trial-ready in spite of any delays the pandemic might or might not cause.

**B.     There Is No Basis To Stay As To The '377 And '542 Patents, Which Also Weighs In Favor Of No Stay At All**

**1.     The '377 And '542 Patents Do Not Overlap With The '233 Patent**

As the party seeking a stay, Garmin has the burden of showing entitlement to one. *Trusted Knight Corp. v. IBM*, No. 19-cv-01206-EMC, 2020 U.S. Dist. LEXIS 158218, at *4 (N.D. Cal. Aug. 31, 2020). However, in trying to sweep the '377 and '542 Patents into the same boat as the '233 Patent, Garmin makes unsupported hand-waving arguments that are contrary to objective facts. Most notably, Garmin fails to even inform the Court of the scope and subject matter of the IPR itself. Garmin makes passing reference to certain prior art that it claims is relevant (Opp., p. 9) but fails to attach that prior art to its briefing or otherwise explain what it is or provide any analysis, instead making only conclusory attorney argument about its purported significance. With respect to the purported overlap in the patents themselves, as discussed in the prior section, Garmin's only "evidence" of this is the fact that Philips has accused some of

the same Garmin products as being host to multiple distinctly different accused functionalities, like a car whose radio infringes one patent, and whose climate control system infringes a second unrelated patent.  The '377 and '542 Patent are directed to different technology from the '233 Patent such that any hypothetical invalidation of the '233 Patent would not inform the result as to the '377 and '542 Patent.  This is clearly demonstrated above in Section II, and with reference to the infringement contentions.

In sum, whatever happens in the IPR on the '233 Patent is simply not going to have any bearing on the legal analyses that need to happen with respect to the '377 and '542 Patents.  The

### 2. The Case Should Proceed On All Three Patents

The fact that the IPR here only relates to one of the three patents still in dispute counsels in favor of continuing as to all the patents. *SZ DJI Tech. Co. v. Yuneec Int'l Co.*, No. CV 16-0595-BRO (KKx), 2016 U.S. Dist. LEXIS 187770, at *9 (C.D. Cal. Dec. 5, 2016) (declining to stay any part of the case in view of the fact that most of the patents at issue were not subject to an IPR); *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 13-12418-DJC, 2014 U.S. Dist. LEXIS 135408, at *26 (D. Mass. Sep. 25, 2014) ("A stay no doubt simplifies the issues where all of the patents-in-suit are subject to IPR.  This is not such a case, however.  Here, only three of the eight patents-in-suit are subject to IPR. Under these circumstances, courts generally deny a stay of the proceedings.").  As explained in *RR Donnelley & Sons Co. v. Xerox Corp.*, No. 12-cv-6198, 2013 U.S. Dist. LEXIS 176620, at *7-8 (N.D. Ill. Dec. 16, 2013):

> Granting a stay as to the entire litigation would cause the four unchallenged VDP patents to languish unresolved  [*8]  for an unspecified amount of time, and up to two years if one or both of Xerox's petitions is granted. *See Dane Technologies, Inc. v. Gatekeeper Systems, Inc.*, 2013 U.S. Dist. LEXIS 117718, 2013 WL 4483355 at *1-3 (D. Minn. 2013). Indeed, other courts have denied a stay where the accused infringer sought review of only some of the patents-in-suit. See e.g. id. (denying motion to stay pending a requested but not yet granted inter partes review, in part, because one of three patents-in-suit would

not be subject to the reexamination); *Davol, Inc. v. Atrium Medical Corp.*, 2013 U.S. Dist. LEXIS 84533, 2013 WL 3013343 at *2-6 (D. Del. 2013) (same); *Pentair Water Pool and Spa, Inc. v. Hayward Indus., Inc.*, 2012 U.S. Dist. LEXIS 178630, 2012 WL 6608619 at *3 (E.D.N.C. December 18, 2012) (denying motion to stay pending inter partes reexamination where only three of the seven patents-in-suit were involved in the reexamination).

### 3. Even If The Case Were Stayed As To The '233 Patent, It Should Continue On The '377 And '542 Patents

Although a stay pending an IPR was granted in the *Drone* case, that case only concerned a single patent. In cases involving multiple patents where only some (or, as here, only one) of the patents is subject to an IPR, courts will readily decline to order a stay as to the remaining patents that are not subject to the IPR. *See, e.g., Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 U.S. Dist. LEXIS 139383, at *9 (N.D. Cal. Oct. 13, 2015) (granting stay as to two patents subject to IPR given that it was early in the case, but denying stay as to two other patents not subject to IPR); *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 18-cv-06452-JSW, 2019 U.S. Dist. LEXIS 231122, at *10-11 (N.D. Cal. July 3, 2019) (where there was little overlap between the patents, granting stay only as to patents subject to IPR, and proceeding with case as to patents not subject to IPR).

Philips would also be prejudiced in not being able to proceed on the '377 and '542 Patents. As discussed above, there is prejudice and inefficiency resulting from delay when the case is already poised to proceed to dispositive motion practice and trial. But beyond that, with Philips is separately litigating the '377 Patent against Fitbit in a parallel lawsuit that is in the midst of discovery and not as far along as the present case. (Ciardullo Dec. ¶ 5.) If Philips can soon get the point in the present case of obtaining dispositive or other helpful rulings on the '377 Patent, that will help guide litigation in the parallel case (and in the event such rulings are favorable to Philips, strengthen Philips's claims). With respect to the '542 Patent, that patent is not expired, and Philips has a right to seek injunctive relief, which right will be needlessly

delayed if the entire case were stayed due to an IPR on an unrelated patent.

## IV. CONCLUSION

For the foregoing reasons, Philips respectfully requests that the Court grant its Motion for entry of a Rule 54(b) judgment on the '007 Patent claims, and that the Court deny Garmin's request for a stay.

DATED:  December 7, 2020          **FOLEY & LARDNER LLP**

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo
Eley O. Thompson
Ruben J. Rodrigues
Lucas I. Silva
John W. Custer
*Attorneys for Philips North America, LLC*