RECEIVED
CLERK, U.S. DISTRICT COURT

8/15/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: ____CL____ DEPUTY

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PHILIPS NORTH AMERICA, LLC,**
*Plaintiff-Appellant*

v.

**GARMIN INTERNATIONAL, INC., GARMIN LTD.,**
*Defendants-Appellees*

---

2022-2255

---

Appeal from the United States District Court for the Central District of California in No. 2:19-cv-06301-AB-KS, Judge André Birotte, Jr.

---

Decided: August 15, 2024

---

ELEY THOMPSON, Foley & Lardner LLP, Chicago, IL, argued for plaintiff-appellant. Also represented by JEAN-PAUL CIARDULLO, Los Angeles, CA; JOHN CUSTER, RUBEN JOSE RODRIGUES, LUCAS I. SILVA, Boston, MA.

RACHAEL D. LAMKIN, Baker Botts LLP, San Francisco, CA, argued for defendants-appellees. Also represented by MICHELLE LYONS MARRIOTT, Erise IP, P.A., Overland Park, KS.

---

Before TARANTO, STOLL, and STARK, *Circuit Judges*.

STOLL, *Circuit Judge*.

Philips North America, LLC ("Philips") brought suit against Garmin International, Inc. and Garmin Ltd. (collectively, "Garmin") in the Central District of California for alleged infringement of several patents, including U.S. Patent Nos. 6,013,007 ("the '007 patent") and 8,277,377 ("the '377 patent"). Philips appealed from the district court's entry of partial final judgment of: (1) invalidity as to the asserted claims of the '007 patent (following claim construction), and (2) no infringement as to the asserted claims of the '377 patent. For the reasons that follow, we agree with the district court's claim construction of "means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver" and thus we affirm the district court's indefiniteness determination as to claims 1 and 21 of the '007 patent. We also vacate the judgment of non-infringement of claim 1 of the '377 patent and remand.

## BACKGROUND

The technology at issue is related to physical activity tracking. The accused Garmin devices are wearable fitness trackers, e.g., a smart watch.

### I

The '007 patent is directed to a "Global Positioning System (GPS) based personal athletic performance monitor for providing an athlete with real-time athletic performance feedback data." '007 patent at Title, Abstract. System claims 1 and 21 are relevant on appeal. Both independent claims contain the term "means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver." '007 patent col. 11 ll. 13–15; *id.* at col. 12 ll. 29–31. The parties do not dispute that the term is subject to 35 U.S.C § 112 ¶ 6 as a means-plus-function term. They also do not dispute that

the function claimed is "computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver." The parties dispute the proper interpretation of that claimed function—specifically, the phrase "athletic performance feedback data"—and whether a corresponding structure is adequately disclosed for the term.

The trial court was not persuaded by Philips's argument that the phrase "athletic performance feedback data" refers only to "elapsed distance of an athlete; current or average speed of an athlete; [or] current or average pace of an athlete." J.A. 7–8 (alteration in original). Instead, the court agreed with Garmin that the '007 patent specification supports interpreting "athletic performance feedback data" more broadly because it discloses that other feedback data like "calories burned" can be calculated based on positions and times collected by a GPS receiver during a session. J.A. 8–10.

Continuing its interpretation of the means-plus-function limitation at issue, Philips argued that the corresponding structure disclosed in the patent specification is "a processor and equivalents thereof." J.A. 7. The district court disagreed and explained that in this case "legal authority requires the asserted patent to disclose an algorithm representing the corresponding structure." J.A. 9 (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012)). Continuing, the court concluded that the specification did not disclose any such algorithm and, in particular, that "the '007 Patent fails to disclose an algorithm for computing 'calories burned' from the series of time-stamped waypoints." J.A. 9–10. Accordingly, the trial court determined that the term "means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver" is indefinite for lack of corresponding structure.

## II

The '377 patent is directed to a method and apparatus "for wireless monitoring of exercise, fitness, or nutrition by connecting a web-enabled wireless phone to a device which provides exercise-related information, including physiological data [e.g., heart rate] and data indicating an amount of exercise performed." '377 patent at Title, Abstract.

Method claim limitation 1(f)(ii), which the trial court did not construe, is the only '377 patent limitation at issue on appeal. It provides: "wherein the data indicating a physiologic status of a subject is received at least partially while the subject is exercising." '377 patent col. 13 ll. 39–41. The trial court explained that claim limitation 1(f)(ii) "requires real-time uploading, *i.e.*, uploading information while the subject is exercising." J.A. 34. Garmin moved for summary judgment of non-infringement, arguing that (1) Philips failed to prove that any person or entity directly infringes limitation 1(f)(ii), and (2) Philips failed to show Garmin's specific intent to induce infringement.

The data gathered by the accused Garmin devices can be divided into two categories: (1) data gathered in Default mode ("all day data," e.g., steps taken, heart rate); and (2) data gathered in Activity mode (exercise training data in addition to all day data). J.A. 62. Philips accuses only the Default mode of infringing claim 1 of the '377 patent, because the claim requires "uploading information" or syncing "while the subject is exercising" and this does not occur in Activity mode. J.A. 34. Specifically, in Activity mode, Garmin's accused devices prevent data from being synced to a user's phone, but after Activity mode is stopped, the user can choose to save the activity, which will sync the user's data. If the user does not save the activity, the device will save it automatically after 30 minutes.

In Default mode, "all day data" is sent from the accused wearable device to a user's phone running the Garmin Connect application during automatic sync events, which occur

PHILIPS NORTH AMERICA, LLC v.                                    5
GARMIN INTERNATIONAL, INC.

"if a length of time (default is 4 hours with a minimum of 1 minute) has gone by without another sync and if the watch has detected more than a certain amount of steps (default is 2000 steps)." J.A. 2734–35 ¶ 192; Appellant's Br. 18 & n.5. A sync event will also occur when a user (1) brings the Garmin Connect app to the foreground of her phone, or (2) manually initiates a sync event by selecting an option on the accused wearable. The data sent from an accused device to Garmin's phone application and servers during a sync is all data since the last sync.

Philips argues that Garmin's Move IQ feature "provides compelling evidence that users exercise in the Default mode." Appellant's Br. 24. Move IQ, which works only when the accused device is in Default mode, continuously monitors for periods of sustained activity and automatically recognizes walking, running, biking, swimming and elliptical training (when done for at least 10 minutes). In Default mode, users can thus track their exercise throughout the day without initiating Activity mode and syncing will occur after the watch detects a certain amount of activity or after the passage of a set amount of time.

The trial court granted Garmin's motion for summary judgment of non-infringement, concluding that Philips "ha[d] not provided sufficient evidence to show that anyone has directly infringed" claim 1 of the '377 patent. J.A. 64. The court did not reach Garmin's argument on induced infringement. In September 2022, the district court entered partial final judgment of: (1) invalidity as to the asserted claims of the '007 patent, and (2) no infringement as to the asserted claims of the '377 patent. Philips appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Definiteness is a question of law that we review de novo. *Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1123 (Fed. Cir. 2016). Identification of a claimed function and determination of what structure, if any,

6                                       PHILIPS NORTH AMERICA, LLC v.
                                               GARMIN INTERNATIONAL, INC.

disclosed in the specification corresponds to the claimed function are questions of law reviewed de novo. *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020).

We review a district court's grant of summary judgment according to the law of the regional circuit. *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1027 (Fed. Cir. 2019). The Ninth Circuit reviews the grant of summary judgment de novo. *Id.* (citing *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017)). Summary judgment is appropriate when, viewing the evidence in favor of the non-movant, there is no genuine dispute of material fact. *Id.* (citing *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)).

I

On appeal, Philips does not take issue with the district court's holding that the structure corresponding to the claimed function of "computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver" is an algorithm.

Instead, Philips argues that the trial court erred by failing to limit its means-plus-function construction to algorithms that compute only certain types of athletic performance feedback data. *See* Appellant's Br. 34. First, Philips asserts that "[c]omputation of calories burned is outside of the asserted claims of the '007 Patent," and that there is "no basis to rewrite" the claims to "modify 'computing athletic performance feedback data' with the additional requirement of 'computing calories burned.'" Appellant's Br. 7, 11. Second, Philips relies on expert testimony to argue that "there is plenty of algorithmic support" for "computing athletic performance feedback data" of "current and average speed, current and average pace, and elapsed distance." Appellant's Br. 39, 44–46 ("the claim language itself identifies algorithmic details in that athletic performance data must be computed *from* a series of time-

PHILIPS NORTH AMERICA, LLC v.                                     7
GARMIN INTERNATIONAL, INC.

stamped waypoints" (quoting J.A. 1017 ¶ 17)). We address each argument in turn below.

A

We first address the construction of the claimed function, "computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver." The specification is "always highly relevant," usually "dispositive," and "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, the '007 patent specification supports the district court's conclusion that "athletic performance feedback data" reasonably includes calories burned in light of the '007 patent specification. J.A. 9. The specification repeatedly lists examples of athletic performance feedback data:

1) "athletic performance feedback data such as elapsed exercise time, distance covered, average pace, elevation difference, distance to go and/or advice for reaching pre-set targets," '007 patent Abstract;

2) "real-time performance feedback such as elapsed time, elapsed distance, current and average speeds and paces, current climbing rate, and so forth," *id.* at col. 2 ll. 8–11;

3) "measures of athletic performance" are "scrolled on the display . . . during each feedback cycle," such as: elapsed distance, elapsed time, current speed, average speed, average pace, current pace, calories burned, and so forth, *see id.* Fig. 11, col. 4 ll. 36–39, col. 6 ll. 49–55;

4) "performance data sets" include: total exercise time, total elapsed distance, maximum speed, total calories burned, total cumulative elevation, and so forth, *see id.* Fig. 12, col. 6 ll. 16–18; and

    5) "performance data such as elapsed distance, current and average speeds and paces, calories burned, miles remaining, and time remaining," *id.* at col. 7 ll. 45–47.

While the specification does not identify "calories burned" every time it lists exemplary athletic performance feedback data, we, like the district court, are not persuaded by Philips's argument that the scope of what constitutes "athletic performance feedback data" should be limited only to "current and average speed, current and average pace, and elapsed distance." J.A. 8; Appellant's Br. 39. This is so because the specification twice identifies performance data as including calories burned. While the specification uses slightly different wording—e.g., "measures of athletic performance" versus "performance data sets"—we are convinced that the inventor used the broad phrase "athletic performance feedback data" to include all of these various terms.

    We thus agree with the trial court that, given the disclosure in the '007 patent specification, calories burned is a type of "athletic performance feedback data." Philips has not identified text in the specification establishing that calories burned should be excluded from a construction of the term. Philips makes only a conclusory assertion that "[c]omputation of calories burned is outside of the asserted claims" of the '007 patent, for which it provides no persuasive record support. Appellant's Br. 7. And its observation during claim construction that the '007 patent "written description only mentions calories twice" is equally unconvincing. J.A. 4449. Accordingly, in this case, we adopt the district court's construction of the "athletic performance feedback data."

B

    Next, we address the issue of whether the specification adequately discloses structure corresponding to the term "means for computing athletic performance feedback data

from the series of time-stamped waypoints obtained by said GPS receiver." Once again, in this appeal, the parties do not dispute that this term is a means-plus-function term and that the '007 patent specification must disclose an algorithm for performing the claimed function.

Means-plus-function claiming "involves a quid pro quo." *Noah*, 675 F.3d at 1318. In exchange for being able to draft a claim limitation in purely functional language, "[t]he applicant must describe in the patent specification some structure which performs the specified function." *Id.* (quoting *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993)). For claims "to serve their proper function of providing the public clear notice of the scope of the patentee's property rights, we cannot allow a patentee to claim in functional terms essentially unbounded by any reference to what one of skill in the art would understand from the public record." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1219 (Fed. Cir. 2003).

Here, it is undisputed that the '007 patent specification does not disclose any algorithm for calculating calories burned from the series of time-stamped waypoints obtained by said GPS receiver. Philips argues only that its expert's unrebutted testimony established that a person of skill in the art would have understood the specification as disclosing "corresponding structural and algorithmic support" for determining certain athletic performance feedback data—specifically, "for current or average speed, current or average pace, or elapsed distance." Appellant's Br. 7–8, 39. As we have discussed, the function claimed is "computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver," and "athletic performance feedback data" includes more than just measurements of speed, pace, or elapsed distance—it also includes calories burned, for example. In his declaration, however, Dr. Martin never mentions calories burned, let alone how one of ordinary skill in the art

10                          PHILIPS NORTH AMERICA, LLC v.
                                       GARMIN INTERNATIONAL, INC.

would have understood how to calculate calories burned based on the specification. We thus agree with the district court that "there is insufficient disclosure supporting how to compute various types of 'athletic performance feedback data.'" J.A. 9. Accordingly, we affirm the court's summary judgement of indefiniteness of claims 1 and 21 of the '007 patent.

## II

Lastly, we consider whether the district court erred in granting Garmin's motion for summary judgment of non-infringement. Because there is a genuine dispute of material fact regarding direct infringement, we conclude that the court erred.

To infringe limitation 1(f)(ii) directly, a user's data indicating a physiologic status (e.g., heart rate) must be synced or uploaded while the user is exercising in Default mode. If and when a user becomes active and takes 2,000 steps in Default mode, the accused device will sync. *See* J.A. 2734–35 ¶ 192.

The parties dispute whether a user's mid-exercise (i.e., current) heart rate is synced during exercise in Default mode. Philips argues that "the data uploaded in a sync event includes *all* of the heart-rate data collected by an Accused Wearable since the last sync, meaning that it includes the very latest heart rate data tracked by the Accused Wearable." Appellant's Reply Br. 15; *see also* J.A. 2689–90 at 180:9–181:2 (the data sent includes "data right up to the moment when [the user] hit[s] the sync[], and . . . using [the] example of the heart rate . . . [the user] would get a graph of [her] heart rate and that would be updated at that point"). For its part, Garmin argues that "[t]he data packet sent during an automatic sync could be data from the last 4 hours, or data from the last 4 days . . . [a]s such, the data cannot possibly provide 'data indicating a physiologic status of a subject,' e.g., a user's current heart

PHILIPS NORTH AMERICA, LLC v. GARMIN INTERNATIONAL, INC.                                                    11

rate." Appellee's Br. 31. The district court did not discuss this genuine dispute of material fact.

The court did note Philips's expert's concession that "not every sync that occurs will happen while the user is exercising," but it failed to acknowledge the remainder of the expert's statement, which says in its entirety: "[w]hile not every sync that occurs will happen while the user is exercising, it is inevitable that some syncs will occur during exercise." J.A. 66; J.A. 2740 ¶ 201. We conclude that a reasonable factfinder could find that: (1) a user wearing an accused device could exercise in Default mode, (2) the record supports that an accused device would record data such as the user's heart rate in Default mode, and (3) the record supports that a sync could happen during the time that the user is exercising.[1] This would be an act of direct infringement, precluding summary judgment on that ground. Garmin has not "provid[ed] evidence that would preclude a finding of [direct] infringement, or . . . show[n] that the evidence on file fails to establish a material issue of fact essential to [Philips's] case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). Accordingly, the court erred in granting summary judgment of no direct infringement.

We acknowledge that Garmin raised an alternative ground for affirmance: Philips "failed to evidence a genuine factual dispute regarding any intent by Garmin to induce infringement." Appellee's Br. 33. As we noted at the outset, in granting summary judgment, the district court

---

[1] Although this circumstance might occur infrequently for a given user, the frequency or amount of usage of a patented method presents a damages question. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334–35 (Fed. Cir. 2009) ("how many . . . users had ever performed the patented method or how many times" is a damages issue).

12 PHILIPS NORTH AMERICA, LLC v.
GARMIN INTERNATIONAL, INC.

did not reach Garmin's argument on induced infringement. We remand for the district court to consider induced infringement in the first instance. To succeed on its induced infringement claim, Philips must prove that Garmin had specific intent to encourage another's infringement. *See, e.g., Warner-Lambert Co. v. Apotex Corp.*, No. 98 C 4293, 2001 WL 1104618, at *3 (N.D. Ill. Sept. 14, 2001) (granting summary judgment of no induced infringement), *aff'd*, 316 F.3d 1348, 1351, 1364 (Fed. Cir. 2003) ("In the absence of any evidence that [the defendant] has or will promote or encourage [others] to infringe the . . . method patent, there has been raised no genuine issue of material fact.").

## CONCLUSION

For the foregoing reasons, we affirm the district court's indefiniteness determination as to claims 1 and 21 of the '007 patent, and we vacate the summary judgment of non-infringement of claim 1 of the '377 patent and remand.

**AFFIRMED-IN-PART, VACATED-AND-REMANDED-IN-PART**

## COSTS

No costs.